## 70501. BECKHAM v. O'BRIEN.
(336 SE2d 375)

BEASLEY, Judge.

The parties were divorced in 1979. The mother was awarded custody of the minor daughter, and the father was granted visitation privileges.

On October 4, 1984, the father was arrested for molesting his then six-year-old daughter on September 24. The mother thereafter refused to allow the father to visit with the child, and on October 30 the father filed a petition seeking to hold the mother in contempt for failing to comply with the visitation provisions of the divorce decree. On November 6, the father was indicted on the molestation charge for which he had previously been arrested.

The mother moved for continuance of the contempt charge pend-

ing the outcome of the father's criminal prosecution and for protection from discovery attempts. On December 13, the court granted the motion; it also ordered that the father "be allowed interim, supervised visitation rights . . . at the home of [the father's sister], with the sister being responsible for picking up and delivering the child from the [mother] . . ." weekly, with additional visits on the impending Christmas and New Year's Days. The court signed an ex-parte order on December 14 (filed December 17) making explicit that the pickup and delivery was to be at the child's home in Augusta and not elsewhere. The next visit was to be on December 15.

The mother did not make the child available on the fifteenth, and the father again moved for contempt. On January 4, 1985, considering only the new petition, the court found the mother in wilful contempt of its December 13 and 17 orders and ordered that she pay a fine of $200 and allow visitation immediately or face incarceration. We granted the mother's application for discretionary appeal of the December 13 and 17 orders and the January 4 order holding her in contempt, under OCGA § 5-6-35 (a) (2).

A modification of child visitation rights is a matter of sound discretion with the trial court and will not be disturbed on appeal absent a showing that the trial court abused its discretion. *Gazaway v. Brackett*, 241 Ga. 127, 129 (244 SE2d 238) (1978); *Tirado v. Shelnutt*, 159 Ga. App. 624, 626 (2) (284 SE2d 641) (1981). We reluctantly find such an abuse of discretion in the orders regarding visitation.

The father stands indicted for "fondl[ing] the genitals of" the very child he now seeks to spend time with. The child is the prosecuting witness in the felony case against him. She should not be forced to visit with him before his case comes to trial, any more than any other alleged victim of any crime should be compelled by a court to engage in social visits with the person against whom probable cause has been found that he committed the crime. The court laid great store in the hallowed principle that a person is innocent until proved guilty. It is true beyond question, in the context of the criminal charge which, if proved, could result in a long imprisonment. But it must be recognized that the criminal charge relates to something that has allegedly already happened. If it happened, then the court's demanding visitation would constitute the court as a powerful coercive party compelling the opportunity for the crime to reoccur. A court certainly would not require an adult rape victim to visit an indicted defendant. No more should a child be required to visit the alleged molester just because it is her father and she is a minor and so subject to the court's supervision with respect to custody and visitation rights. The integrity of the criminal law's system of justice and the safety and well-being (psychologically and emotionally as well as physically) of the 6-year-old heavily outweigh the rights of the indicted father to visit

with his daughter. It is further aggravated because the visits would be private and could be virtually unsupervised; the sister's only specific obligation was merely to provide transport.

But even if someone were in the presence of the father and child during the visit to be able to verify that no improper acts were committed on the child, harm to the credibility of the child would be nearly inevitable because of the impending trial.

The opportunity for intimidation, coercion and undue influence would be so great that only a rare human being could withstand the temptation to subtly and obliquely influence the child witness. The statute making intimidation a crime (OCGA § 16-10-93) will not protect the child during the visits. It is a sword and not a shield. It will only punish after the damage is done. As for the "deterrent" effect of the criminal statute, its sentence is one to five years, whereas the sentence for a conviction of child molestation, which the father to be visited face, is one to twenty years. OCGA § 16-6-4 (b).

In addition, there is evidence that there have already been threats. The mother testified at the contempt hearing that her daughter told her that her father's friend threatened "that if she told, he would steal her, and her daddy told her that he would shoot her baby sister and her mama and her daddy, and he had also said that they would run him out of town if she told on him." The mother's sister-in-law testified that the child had told her that "he [the father] said that he would kill her mommy and her baby sister. His friend said that he would steal her and she would never see them again" and also that "the police would hurt him . . . shoot him with their gun . . ." She further testified that the child had said "If I tell you, they would send him out of state." Thus, if the above testimony is true, the statute has not been a deterrent.

In addition, the child's psychological and emotional welfare are at stake. The pressures upon her prior to trial will be great in themselves and would be substantially exacerbated by compelled visits. Both the mother and her sister-in-law testified that the child is afraid of her father.

While we recognize that the father has not been convicted of molesting this child, we do not see this case as simply an angry mother pointing accusingly at her ex-husband in order to avoid his visitation rights. The father has been *indicted* by a grand jury. The role of the grand jury is to determine if "there be sufficient cause to call upon the party to answer it. A grand jury, however, ought to be thoroughly persuaded of the truth of an indictment, so far as their evidence goes; and not to rest satisfied merely with remote probabilities." *Beavers v. Henkel,* 194 U. S. 73, 84 (24 SC 605, 48 LE 882) (1903). For an indictment to be issued under this jurisdiction, the grand jury must be persuaded that there is probable cause to believe the party is guilty.

See W. Daniel, Ga. Criminal Trial Practice, § 12-19 (1984). The grand jury has found that the evidence presented was "sufficient to justify putting the party suspected on trial." *Barlow v. State,* 127 Ga. 58, 60 (56 SE 131) (1906) citing *Frisbie v. United States,* 157 U. S. 160, 163 (15 SC 586, 39 LE 657) (1894).

Upon reviewing the record and the transcript of the contempt hearing, we conclude that the trial court abused its discretion in ordering that the father be allowed to exercise visitation rights, albeit "supervised visitation" rights, while the criminal charge is pending. The visitation modification orders of December 13 and 17, which force the child to visit with the man who has been indicted for molesting her and against whom she is to be a witness, are clearly not in the child's best interest and must be reversed. See *Ledford v. Bowers,* 248 Ga. 804 (1) (286 SE2d 293) (1982), where the trial court abused its discretion in increasing the father's visitation rights in the face of evidence that the father had an overt sexual attraction for the daughter.

The order finding the mother in contempt of the December orders is also reversed. The court has authority to punish for contempt when there is disobedience of its order by a party to the suit. OCGA § 15-1-4 (a) (3). Ordinarily, the proper method for attacking an erroneous court order is to appeal it or to take some measure to persuade the ordering court to reconsider and change it. A person may not simply ignore it; if he does so, he does so at his own peril and must assume the risk of being held in contempt. *Farmer v. Holton,* 146 Ga. App. 102, 108 (4) (245 SE2d 457) (1978). This is recognized in *Gallit v. Buckley,* 240 Ga. 621, 625 (242 SE2d 89) (1978), citing *Hall v. Hall,* 240 Ga. 28 (239 SE2d 356) (1977). We note, on the other hand, the Supreme Court's holding in an appeal from a contempt order wherein it found the underlying order "unreasonable and void." It concluded: "The trial judge therefore erred in finding the husband in contempt for violating this item of the order . . ." *Maloof v. Maloof,* 231 Ga. 811, 812 (204 SE2d 162) (1974).

Without simply relying on the erroneous nature of the underlying orders to justify noncompliance, however, we find here that the disobedience was not contemptuous because of the circumstances. They prevented a real opportunity to seek change or appeal because of the exigencies of what transpired between the rendition of the orders and the scheduled visitation of Saturday, December 15. The mother testified that on December 14, after the court had ordered visitation, when she told her little daughter she would have to visit with her father the next day, her reaction was severe: "She was crying and upset. My husband and I both told her together, and she begged my husband not to make her go. She said she would get hurt again, and she didn't want to get hurt, and she was crying. Later that night she went on to

sleep . . . and got up in the middle of the night throwing up . . . She said she was having nightmares; that her . . . she was dreaming that her daddy was killing . . . her baby sister." Consequently, the family left early on vacation, that morning, instead of waiting until the scheduled visit took place.

To hold in contempt, the court must find that there was a wilful disobedience of the court's decree or judgment. *Gallit,* supra, 240 Ga. at 626; *Horton v. Horton,* 222 Ga. 430 (150 SE2d 630) (1966). *Griggers v. Bryant,* 239 Ga. 244, 246 (2) (236 SE2d 599) (1977), speaks of "a 'wilful' refusal to comply with a judgment or order of the court." However, a change of condition "subsequent to the making of a court order may constitute sufficient justification for disregarding such order." 17 CJS 44, Contempt, § 15. The circumstances which existed before, including the complaints from the child of molestation and threats, the fears expressed by the child, and the grand jury action and impending trial wherein the child would be the primary witness, exacerbated as they were by the actual physical sickness of the child the night before the visit, constituted justification which would make the disobedience of the court orders short of that wilful violation rising to the level of contempt. Due in part to the unusually close timing of the material events here, as well as to the circumstances described, the mother was nearly forced to disobey the court orders and flee in order to protect the child not only from the potential of what she sincerely believed (and not without foundation) would be physical harm to her daughter but also from psychological harm and from intimidation or undue persuasion and influence on the witness. The latter is an obligation which the court is bound to perform and it had refused to do so on the theory that the defendant is innocent until proven guilty.

We therefore find an abuse of discretion also in the issuance of the civil contempt order which conditionally fined the mother $200 and ordered her immediate incarceration if she did not allow any of the weekly visitation beginning January 5. See *Hopkins v. Hopkins,* 244 Ga. 66, 67 (1) (257 SE2d 900) (1979), for the distinction between civil and criminal contempt.

The result is that the petitions for contempt filed in November and December are fully adjudicated against the petitioner. The contempt citation is reversed. The petition for contempt filed in October is still being held in abeyance due to the continuance granted as part of the December 14 (filed December 17) order; that portion was not challenged on appeal and is not reversed.

*Judgment reversed and case remanded for further action not inconsistent herewith. Deen, P. J., and Pope, J., concur.*

DECIDED OCTOBER 22, 1985.

*Charles L. Wilkinson III*, for appellant.
*J. Richard Dunstan*, for appellee.