Jean Elizabeth MORGAN, Appellant,

v.

Eric A. FORETICH, Appellee.

No. 86–1137.

District of Columbia Court of Appeals.

Argued Nov. 18, 1986.
Decided Feb. 6, 1987.

G. Allen Dale, Washington, D.C., and Richard L. Ducote, New Orleans, La., for appellant.

John C. Lenahan and Joseph Volpe III, Fairfax, Va., for appellee.

Christopher T. Dunn, Arthur B. Spitzer and Elizabeth Symonds filed a brief for amicus curiae American Civil Liberties Union of the National Capital Area.

Before MACK, BELSON and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

This appeal arises out of a bitter and litigious child custody and visitation rights dispute. Custody was originally granted to appellant, Elizabeth Morgan, the mother, while appellee, Eric Foretich, the father, was awarded liberal visitation. After an extended period of conflict over visitation and charges against appellee of sexual abuse, the trial court granted appellee's motions for civil contempt against Morgan and ordered her incarcerated for refusing to turn the child over for visitation.[1] Appellant raises numerous issues on appeal.

---

1. Appellant was released by this court by order of August 7 pending the outcome of this appeal. All the terms and conditions of that order, including the bond, passport custody, and travel restrictions, continue in full force and remain unaffected by this opinion and remand of the record.

For the purposes of this opinion we need decide only one: Whether the trial court violated appellant's due process rights under the Fifth Amendment in refusing to grant appellant's request to open to the public the final hearing at which she was ordered incarcerated.[2] We hold that the trial court did not make the specific findings that are required by the applicable case law before closing the hearing. Therefore, we remand the record to have the trial court fully articulate the basis of its decision.

## I.

Since the issue before us is one of law, we set forth only those facts necessary to put the issue in perspective. The child, H., was born in 1982, after her parents had already separated. On November 8, 1984, Morgan was awarded custody and Foretich given liberal visitation. At that time, the trial court also granted the first of many protective orders that have sealed all the trial proceedings and records in this case.

Beginning in January 1985, appellant began to make accusations that appellee was sexually abusing H. during visitation. Further litigation ensued but appellee retained visitation rights. Appellee's last visit with H. prior to the summer contempt proceedings took place in February 1986. After the February visit, Foretich alleged that appellant repeatedly refused to turn the child over to him for his court ordered visitation. He therefore filed multiple motions to have Morgan held in contempt. Hearings were held in June and July of 1986 on several motions, including Foretich's motions for contempt and change of custody and Morgan's motions for temporary suspension of visitation and to compel discovery. On July 17, the trial judge orally announced his findings of fact and conclusions of law. He found that appellant had disobeyed the visitation orders without lawful justification or excuse, but withheld judgment of contempt contingent upon her turning over the child for visitation on July 19.[3]

The next hearing, held on August 5, 1986, was to determine whether the court should enter the judgment of contempt which had been held in abeyance on July 17. Appellant stated that H. had not been turned over to appellee on July 19 and proffered to the court evidence that she felt would support a justification defense. Appellant then requested that the courtroom be opened stating that, "inasmuch as she is entitled to a public trial, inasmuch as any person subject to incarceration would be entitled to ... and that right supersedes the interest in maintaining this in a closed fashion." The court denied the request, stating:

> But I think based upon everything I am aware that this is totally an inappropriate time to open this matter in consideration with everything going forward, parties litigating behind closed doors, because all anyone would be seeing is this last one effort on the part of Dr. Morgan to demonstrate to me that the child could not have been turned over or should not have been turned over. I think your

**2.** The other issues raised by appellant are: 1) whether appellant was deprived of due process at the August 5, 1986 proceeding because the trial court declined to consider all the evidence proffered by appellant; 2) whether the trial court's finding of civil contempt was clearly erroneous; 3) whether the trial court's finding with regard to sexual abuse was clearly erroneous; and 4) whether the trial court erred in refusing to compel discovery. We hold these issues in abeyance at this time. Appellant filed in this court two motions to remand the case to the trial court for the purpose of taking additional evidence. One was filed on October 3, 1986, and the second on November 10, 1986. In our order of November 17, 1986, we indicated that these motions were best directed to the trial court under *Smith v. Pollin*, 90 U.S.App.D.C. 178, 194 F.2d 349 (1952), and observed that disposition of the motions might impact, by way of mootness or otherwise, on these other issues raised in this appeal. No documents have been filed in the instant appeal concerning action on these motions. Another separate appeal (No. 86–1615) is pending before this court from a trial court order dated December 8, 1986, which may involve disposition of these or like motions. The record on that appeal, however, is still incomplete. Hence, this opinion deals only with the issue of a public hearing.

**3.** The court also denied the motions for change of custody and temporary suspension of visitation.

request is totally unfair to all the parties involved, so your request will be denied at this time. . . .

The court reserved the possibility that future hearings in this case could be open to the public and that the entire file might be opened at a later date.[4]

## II.

■ Appellant claims that a defendant in a civil contempt proceeding has a Fifth Amendment due process right to a public trial relying on *In re Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948). Appellee first makes three technical objections before addressing appellant's public hearing argument: 1) the issue was not preserved because Morgan never appealed from the August 6 written order that appellee alleges confirmed the closure the previous day;[5] 2) appellant waived whatever right to an open hearing may exist by failing to assert it at the beginning of the hearings on the contempt motions in June;[6] and 3) irrespective of any theoretical right, D.C. Code § 16–2344 (1981), required that the trial court close the hearing.[7] Appellee also contends that the constitutional right to a public trial in criminal cases does not apply in child custody civil suits and that alternatively the closure of the hearing was con-

4. This is the entire record concerning Morgan's attempt to open the proceedings. Appellant did not give the court advance notice of her request nor submit any memoranda or case law to support her argument at the hearing. Therefore, despite our ultimate conclusion that the trial judge did not make the required findings, we imply no criticism of the trial judge's performance. To the contrary, it appears to us at this juncture that he has handled a difficult case with skill and impartiality.

5. Appellant filed notices of appeal on August 5 as well as from the August 15 written findings and conclusions of law. Appellant had objected to closure at the August 5th hearing. The issue is properly before us.

6. In *Levine v. United States,* 362 U.S. 610, 618, 80 S.Ct. 1038, 1043, 4 L.Ed.2d 989 (1960), Justice Frankfurter wrote with respect to a grand jury witness:

Having refused to answer each question in turn, and having resolved not to answer at all, petitioner then might well have insisted that, as summary punishment was to be imposed, the courtroom be opened so that the act of contempt, that is, his definitive refusal to comply with the court's direction to answer the previously propounded questions, and that the consequent adjudication and sentence might occur in public.

If some part of the right remains until that moment when the final act of contempt is complete and judgment is about to be entered, Morgan must have retained the right to object at the beginning of the August 5 hearing, as the proceedings had not yet reached that point. We see no reason, however, why Morgan's delay could not be taken into consideration as one relevant factor, as indicated in the trial court's explanation quoted above, for denying the August 5 request. However, we note that Morgan sought to have more than her last act of defiance held in open court. She sought to introduce evidence that she believed would justify her refusal to turn over the child. As appellant did not renew her request to open the hearing at the moment when "summary punishment was to be imposed," the *Levine* issue is not before us today.

7. Section 16–2344 provides:

Upon trial of a proceeding over which the [Family] Division has jurisdiction under paragraph (3), (4), (10) or (11) of Section 11–1101, the court may exclude the general public and *at the request of either party, shall exclude the general public.* (Emphasis added.)

D.C.Code § 11–1101(4) (1981) gives exclusive jurisdiction to the Family Division over "actions seeking custody of minor children. . . ." Appellee cited § 16–2344 in his motion for closure back in November 1984. The trial court granted the motion relying on "the authorities cited in appellee's motion." Since then, the trial court has granted his requests for closure and Morgan has acceded to his requests. Therefore he contends that closure was based on his original assertion of § 16–2344, as these hearings concerned both the motions for contempt and Foretich's motion for custody and Morgan's motion to suspend visitation, the latter motions falling within the scope of proceedings covered by § 16–2344. (We will assume that appellee correctly interprets the scope of § 16–2344.)

However, the trial judge did not refer to § 16–2344 in his his oral ruling. He seems to have approached the issue as a fairness inquiry, requiring a balancing test. In Part III, we will hold that the trial court did not sufficiently articulate the interests at stake or make the specific findings necessary for appellate review. Therefore, we need not reach the statutory issue. If upon remand, the trial court relies in whole or in part on § 16–2344, then the constitutionality of that section might be called into question by appellant, *see Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); *In re Washington Post Co.,* 807 F.2d 383 (4th Cir.1986), and the United States Attorney General must be notified. Super.Ct.Civ.R. 24(c); D.C.App.R. 52.

sistent with the fairness interests normally protected by public trials and compelled by the need to protect the child. Since appellee's technical arguments will be effectively mooted if the hearing had been properly closed, we concentrate directly on the constitutional issues.

### III.

■ We hold that a civil, as well as a criminal, contemnor has a qualified right not to be incarcerated in a secret proceeding. In *In re Oliver, supra,* a grand jury witness was summarily held in criminal contempt and sentenced in a secret proceeding. The Supreme Court held:

> In view of this nation's historic distrust of secret proceedings, their inherent dangers to freedom, and the universal requirement of our federal and state governments that criminal trials be public, the Fourteenth Amendment's guarantee that no one shall be deprived of his liberty without due process of law means at least that an accused cannot be thus sentenced to prison.

*Id.* 333 U.S. at 273, 68 S.Ct. at 507. Appellant relies on footnote 13 in *In re Oliver,* 333 U.S. at 266, 68 S.Ct. at 504, which suggests that the distinction between civil and criminal contempt is "not material in resolving the due process question." The Second Circuit came to the same conclusion in *In re Rosahn,* 671 F.2d 690 (2d Cir.1982). We are persuaded by Judge Mansfield's testimony. He stated:

> While the passages quoted from *In re Oliver* [8] were written primarily with criminal trials in mind, it is significant that the contempt sentence overturned by the *Oliver* Court on the ground that the contempt proceeding below had been improperly closed to the public was a conditional jail sentence that would have terminated upon compliance with the trial court's order. Accordingly, the *Oliver* analysis was applied to invalidate a contempt sanction whose central characteristic—its conditional nature—is typical of a

*civil* contempt. See *United States v. Wendy,* 575 F.2d 1025, 1029 n. 13 (2d Cir.1978) (discussing distinction between civil and criminal contempt).

*Id.* at 696 (emphasis in original). Furthermore the policy considerations are the same:

> Given the burden that imprisonment imposes on an individual, a civil contempt trial that could result in an order of confinement carries with it the same concerns and purposes that lead to the requirement of a public trial in the criminal context, such as the need to assure accountability in the exercise of judicial and governmental power, the preservation of the appearance of fairness, and the enhancement of the public's confidence in the judicial system.

*Id.,* at 697. The *Rosahn* opinion also notes that the conclusion that civil contemnors like criminal contemnors have some right to a public proceeding is consistent with the trend in federal courts to "afford the same or similar procedural safeguards to persons charged with civil contempt as to those charged with criminal contempt." *Id.* at 697.

Although we conclude that a civil contemnor has a Fifth Amendment due process right to a public hearing, as appellant concedes, such a right is not absolute. She argues, however, that as in cases under the First and Sixth Amendments that guarantee open proceedings to defendants and the press in criminal cases, there is a presumption of openness which

> may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

*Press-Enterprise Co. v. Superior Court,* 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984); [9] *see also Richmond*

---

8. The passages referred to include the one quoted *supra.*

9. In *Press-Enterprise* the Supreme Court held that the guarantee of open proceedings in criminal trials covers the voir dire examination of

*Newspapers, Inc. v. Virginia*, 448 U.S. 555, 581, and n. 18, 100 S.Ct. 2814, 2829, and n. 18, 65 L.Ed.2d 973 (1980); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 608–09, 102 S.Ct. 2613, 2620–21, 73 L.Ed.2d 248 (1982) (First Amendment); *Waller v. Georgia*, 467 U.S. 39, 48, 104 S.Ct. 2210, 2216, 81 L.Ed.2d 31 (1984) (Sixth Amendment) ("the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure").

■ We hold, however, that the presumption of openness and the standard for closure that apply in criminal cases, where the constitutional threshold for closure is highest, do not apply to the evidentiary phase of a civil contempt hearing in a child custody and visitation rights case.[10] A less stringent standard is applicable to the instant case.

We base this conclusion in part on the fact that Family Division proceedings do not have the same tradition of openness as criminal or non-family civil cases.[11] For example, until the passage of the Matrimonial Causes Act of 1857, exclusive jurisdiction in England over marriage and divorce was in the ecclesiastical courts. H. CLARK,

*Law of Domestic Relations* 281–82 (1968). In these courts it appears that witnesses were often deposed in private. *C. v. C.*, 320 A.2d 717, 726–27 (Del.1974); 3 W. BLACKSTONE *Commentaries* 373. That approach, though modified by constitutional protections and the absorption of domestic relations into the common law courts, has been extended in this country. *See* Unif. Marriage and Divorce Act § 406(c) 9A U.L.A. 206 (1973) (court may exclude public from a custody hearing); Annotation, *Propriety of Exclusion of Press and Public or Other Media Representatives from Civil Trial*, 79 A.L.R.3d 401, 405–07 (1977) (in divorce proceedings trial judge has inherent power to exclude the press if their presence would interfere with the proper administration of justice); *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978) (approving the proposition that common law right of inspection of court records bows before power of court to insure that its records are not used to gratify private spite or promote public scandal in divorce suits). This rationale based on past practice is also supported by current statutory protections for minor children in these cases. Since custody and visitation rights determinations are based on an analysis of "the best interests of the child," and since the evidentiary phase of civil contempt pro-

potential jurors. The defendant and the state favored closure, while petitioner, a member of the media, requested access. Interestingly, the majority opinion does not explicitly rely on the First Amendment, rather it seems to rest on historical practice (or possibly the Sixth Amendment). Nevertheless, the majority does cite *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982), which is clearly a First Amendment case, as authority. *Globe Newspaper* held that the press and public have a qualified right to attend criminal trials, overturning a Massachusetts statute that mandated that all trials involving minor victims of sex crimes be closed.

10. We note that we write on a clean slate. The public hearing right for contemnors arising under the Fifth Amendment was recognized by the Supreme Court in the context of a grand jury inquiry, a proceeding where there *is* no presumption of openness; to the contrary, grand juries have historically been closed. Therefore the defendant-witness has no right to have the

grand jury questions read in public, only the summary trial and sentencing can be held in open court. *Levine v. United States, supra*, 362 U.S. at 618, 80 S.Ct. at 1043; *In re Oliver, supra*. In this case, for the first time, a contemnor seeks to publically assert a substantive defense in a proceeding other than one with a tradition of complete secrecy.

11. Several federal circuits have extended the strict standard to First Amendment claims for access to civil cases relying on Supreme Court dicta in *Richmond Newspapers, Inc.* that "historically both civil and criminal trials have been presumptively open." 448 U.S. at 580 n. 17, 100 S.Ct. at 2829 n. 17. *See Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059 (3rd Cir.1984); *Westmoreland v. Columbia Broadcasting System*, 752 F.2d 16, 23 (2d Cir.1984). These cases are inapposite here, and we take no position on them. *See* note 12 *infra*. Although technically classified as civil cases, family proceedings do not have the same historical presumption of openness as discussed above.

ceedings adjudicating violation of visitation orders necessarily implicates the child's interests, a presumption of openness would be inappropriate.

■ Thus we conclude that the presumption of openness that underlies the *Press-Enterprise* standard does not attach to the evidentiary phase of a civil contempt hearing in a child custody and visitation rights case. Openness or closure must be determined on a case by case basis with no presumption attaching to either. The trial court must balance the qualified due process right of the contemnor to an open civil contempt proceeding against the best interests and possible privacy rights of the child and the reputational or other interests of those opposing an open hearing.[12]

Although we hold that it would be inappropriate to apply a test as stringent as that enumerated in *Press-Enterprise* in the instant case, we also conclude that the trial judge should have recognized appellant's limited right to have an open hearing and weighed that right against the interests of the child and appellee as indicated above, and made explicit findings supporting his ruling. We therefore remand the record so that the trial court may consider his decision to close the August 5 hearing in light of the competing interests involved and make findings specific enough for us to determine how he weighed the interests of appellant, appellee, and the child in the context of the qualified constitutional right of a civil contemnor to a public hearing that we recognize today.

■ While this procedure might be criticized for permitting the trial court to construct a *post hoc* rationalization to support its original ruling, we do so here because our examination suggests that the record would support closure in this case [13] under even the strict *Press-Enterprise* standard advocated by appellant. *See Globe Newspaper Co. v. Superior Court, supra* (on a case-by-case basis, trial courts may determine that closure is necessary to protect the physical and mental well-being of a minor sex crime victim). We conclude, however, that in light of the Supreme Court's insistence on articulated interests and specific findings, most recently in *Press-Enterprise Co. v. Superior Court of California (Press-Enterprise II),* — U.S. ——, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986), it is inadvisable for such a conclusion to remain only implicit in the record.[14]

Accordingly, the record on appeal is remanded to the trial court for action consistent with this opinion.

*So ordered.*

12. We emphasize that our holding is limited to the evidentiary phase of a civil contempt proceeding in the Family Division. We are not presented with other proceedings in the Family Division not involving the potential for incarceration of one of the parties. Nor are we presented with the question of openness or closure in civil contempt proceedings outside the Family Division.

13. By closure we refer to closure of the proffer and presentation of evidence and argument by counsel on the substantive issues concerning contempt. The right to have the final act of defiance and order of incarceration held in open court, discussed in *Levine, supra,* may be closer to an absolute right and closure of that

part of a contempt hearing might be governed by a stricter standard. We mention again that appellant did not renew her request when the August 5 proceedings reached this point.

14. We note, however, that in an analogous case at least one federal circuit came to a contrary conclusion. *In re Iowa Freedom of Information Council,* 724 F.2d 658 (8th Cir.1983) (failure of the trial court to give a member of the media a hearing and make findings in a civil contempt suit closed because it involved trade secrets held to be harmless error; panel evaluates the trade secret question itself and decides there were no alternatives to closure and therefore no need to remand the case).