Jean Elizabeth MORGAN, Appellant,

v.

Eric A. FORETICH, Appellee.

No. 86–1137.

District of Columbia Court of Appeals.

Argued Nov. 18, 1986.
Decided June 30, 1987.

G. Allen Dale, Washington, D.C., and Richard L. Ducote, New Orleans, La., for appellant.

John C. Lenahan and Joseph Volpe III, Fairfax, Va., for appellee.

Before MACK, BELSON and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

In *Morgan v. Foretich*, 521 A.2d 248 (D.C.1987) [*Morgan I*], we recognized the qualified due process right of a civil contemnor facing incarceration to a public hearing in a child custody and visitation rights dispute. We remanded the record to have the trial court reassess its decision to close a civil contempt hearing in light of our opinion. Today, we hold that the findings made by the trial court in response to our opinion are adequate to permit appellate review and to support its decision to close the hearing. In addition, we decide the remaining issues that we held in abeyance pending resolution of the closure issue. We now affirm.

## I.

In *Morgan I*, we directed the trial court to make specific findings weighing the qualified due process right of appellant, Morgan, to an open hearing against the best interests and possible privacy interests of the child, H., and the reputational or other interests of the appellee, Foretich, who opposed an open hearing. In response, the trial court made findings on February 12, 1987 which reaffirmed its August 5, 1986 oral ruling closing the hearing.

 The trial court primarily relied on a finding that an open hearing would not have been in the best interests of the child, stating in part:

> Since the initiation of these proceedings there have been graphic descriptions of alleged acts, abuses and occurrences by and to the minor child in testimony, documents, photographs and videotapes. These allegations are highly sensitive and inextricably intertwined with every phase of these proceedings. All of this if revealed to the public would be embarrassing and damaging to the child and the child's reputation, now and in the future. To allow these allegations to be published to the world and to allow this Court to serve as a public forum on the issue of the alleged abuse at the expense of compromising this innocent child's right to privacy and freedom from notorious public scrutiny is adverse to the best interests of the child.[1]

Additional findings of fact that are part of the sealed record on appeal contain a more graphic description of the specific allegations and evidence that appellant sought to introduce at the August 5 hearing. These findings, unlike the trial court's brief oral ruling on August 5, *see* 521 A.2d at 249–50, sufficiently state the factual basis of the trial court's decision to permit appellate review. While not every child in an abuse case needs such protection nor is complete closure necessarily the only remedy, we take no issue with the trial court's determination that on the facts presented here, an open hearing on appellant's proffered evi-

---

1. Findings of Fact Responding to the Court of Appeals' Opinion and Order Dated February 6, 1987 (February 12, 1987), Appendix at 4. The Appendix, which is incorporated by reference into the Findings of Fact, is the trial court's order of November 26, 1986 denying the Washington Post access to the record. That order, which was not appealed by the Washington Post and was not part of the appellate record in this case, relied on essentially the same factual basis

for closure as the order in this case and was issued before our opinion and remand. In the February 12 Findings of Fact, the trial court notes and we agree that the existence and content of the November 26 order should negate any inference that the trial court's February 12, 1987 findings justifying closure are a post-hoc rationalization of the August 5, 1986 oral ruling contrived to satisfy our February 6 opinion in *Morgan I*.

dence on August 5 would have been adverse to the best interests of the child and that based on appellant's proffered evidence, there was no acceptable alternative to closure. Furthermore, in this case, this factor alone could outweigh appellant's qualified due process right to an open hearing. *See Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 608, 102 S.Ct. 2613, 2620, 73 L.Ed.2d 248 (1982) (under stricter standard applicable in criminal cases, closure can be ordered if necessary to protect a minor sex crime victim).[2] We have considered but are not persuaded by appellant's numerous objections to the trial court's findings. Under the standard set forth in *Morgan I,* we hold that closure of the August 5 hearing was not an abuse of discretion.[3]

## II.

We now consider appellant's other issues on appeal which we held in abeyance.[4] Ap-

pellant asserts various errors in the August 5 proceeding at which the July 17 judgment of contempt was entered and appellant taken into custody and in the August 15 Findings of Fact and Conclusions of Law disposing of appellee's contempt and change of custody motions and appellant's motion to suspend visitation. We discuss each contention in turn.[5]

■■■ 1. *Failure to Hear Proffered Evidence.* Morgan argues that she was denied due process at the August 5 proceeding when the trial court refused to consider all her proffered evidence. It is well settled that the relevancy of proposed testimony is a decision entrusted to the broad discretion of the trial judge. *Johnson v. United States,* 452 A.2d 959 (D.C.1982). The trial court noted that testimony on appellee's multiple contempt motions and Morgan's motion to suspend visitation had

2. The trial court also found that an open hearing would have been unfair to appellee. The August 5 hearing was solely to determine whether the contempt judgment held in abeyance should be entered. Appellee would not have been able to respond to appellant's public accusations as the trial on the abuse issue had been conducted by mutual consent in closed session and was completed on July 17. Therefore a public hearing would not have advanced the preservation of the appearance of fairness, *see Morgan I,* 521 A.2d at 251. To the contrary, it would have allowed appellant a one-sided, last ditch effort to relitigate her case. These circumstances were also an additional permissible consideration in the trial court's decision to close the hearing.

3. In the absence of clear direction from the Supreme Court, some federal courts have reviewed trial court findings justifying closure orders under an abuse of discretion standard, *Publicker Industries, Inc. v. Cohen,* 733 F.2d 1059 (3rd Cir.1984) (closure of motion hearings in civil suit); *In re WFMJ Broadcasting Company,* 566 F.Supp. 1036 (N.D.Oh.1983) (access to criminal trials under First Amendment), while others do not state the standard applied. *United States v. De Los Santos,* 810 F.2d 1326, 1334 (5th Cir.1987) (suppression hearing properly closed; panel evaluates under the applicable test itself but also states that the trial court made adequate findings to support closure); *United States v. Peters,* 754 F.2d 753 (7th Cir.1985) (voir dire improperly closed as trial court's findings lack specificity of overriding interest, fail to establish threat to impartial jury and fail to fully consider

alternative or narrower closure: appears to be virtually de novo review). We believe that some degree of discretion should be given to the trial court's assessment of the competing interests of the parties in light of the facts and circumstances of the particular case, *see Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 598–99, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978); *United States v. Criden,* 675 F.2d 550, 562 (3rd Cir.1982) (degree of discretion left open). However, in light of the constitutional due process right at stake the trial court's exercise of discretion must be carefully reviewed and supported by specific findings and articulated interests. In this case, even under a de novo review of the record, we would affirm the trial court's ruling.

4. We noted that during the course of proceedings in this appeal, two motions to open the case for the taking of additional evidence had been filed, the disposition of which might impact, by way of mootness or otherwise, on the remaining issues in this appeal, and that as of the date of the issuance of the *Morgan I* opinion, no documents had been filed in the instant appeal concerning action on those motions. 521 A.2d at 249 n. 2. Although the file still lacks any such document, we understand that those motions were denied by the trial court and are now pending before us in a subsequent appeal in this litigation, No. 86–1615 (appeal filed December 9, 1986). We therefore see no reason to delay further in disposing of the instant appeal.

5. *See Morgan I,* 521 A.2d at 249–50 for a brief statement of the facts.

been taken between June 5 and July 17 and both sides had rested. Therefore, the August 5 hearing concerned only whether the judgment of contempt which had been withheld on July 17, to allow Morgan two last opportunities to permit visitation, should be entered. The trial court decided to view the portions of the proffered videotapes that concerned the child's actions during the attempted visitations on July 19 and August 1 but not to receive evidence or testimony about events that took place after the July 19 and August 1 visitation attempts or which would have relitigated issues resolved at the contempt trial less than a month previously.[6] In this instance we are not persuaded that the trial court abused its discretion in its evidentiary rulings, including the exclusion of evidence that was cumulative and/or not relevant to the issues presented on August 5.[7]

■ 2. *Judgment of Contempt.* The trial court held appellant in civil contempt for refusing appellee visitation on alternating weekends from February 1986 through July 17, 1986. Appellant never appealed the underlying November 1984 and December 1985 orders requiring visitation, therefore she was under a continuing duty to comply therewith. "Noncompliance cannot be justified by seeking to establish that the judgment was improvident. Rather, justification is established only upon a showing of inability to perform or substantial performance." *Bolden v. Bolden,* 376 A.2d 430, 432 (D.C.1977). Morgan admitted that she did not turn the child over to appellee; thus, she bore the burden of establishing justification for noncompliance. *Id.* In her brief, appellant contends that the child's

refusal to go, particularly on July 19 and August 1, as well as her duty to protect the child from abuse amounts to a valid justification defense. To the contrary, on the child's refusal to go, the trial court made a factual finding that "on each occasion, the [appellant] had the total capacity to release H. to [appellee] and that she chose not to do so without justification or excuse." Our review of the record does not reveal that this factual finding was clearly erroneous or without evidence to support it. D.C. Code § 17–305(a) (1981).

Appellant relies heavily on *Beckham v. O'Brien,* 176 Ga.App. 518, 336 S.E.2d 375 (1985), for the proposition that a mother's refusal to comply with court ordered visitation with an alleged abuser is not contemptuous. That case is distinguishable on several grounds. First, the father had been indicted on a charge of sexual molestation of the child subject to the visitation. The probable cause finding by the grand jury convinced the court that this was not a case of "simply an angry mother pointing accusingly at her ex-husband in order to avoid his visitation rights." 336 S.E.2d at 337. In the case before us, no prosecuting authority that has investigated the allegations has brought charges against appellee, and more importantly, the trial court conducted a trial on the abuse issue and contemporaneously ruled in the father's favor.

Furthermore, the Georgia court found exigent circumstances not present here, referring to the "unusually close timing of the material events." In contrast, in this case, the trial court provided ample opportunity for Morgan to try to prove her alle-

---

6. Specifically, appellant sought to introduce a psychological evaluation of the child performed after July 17 and videotapes made of the child subsequent to the failed visitation attempts. The trial judge also permissibly declined to hear appellant's testimony after hearing counsel's proffer that Morgan would testify to her subjective beliefs that the abuse had occurred. Appellant had testified at length in the June and July proceedings on the abuse issue and her August 5 proposed testimony would not have particularly elucidated matters at issue.

7. Appellant alternatively argues that her proffers were part of an oral motion for reconsideration based on newly discovered evidence. *Ma-*

*hallati v. Williams,* 479 A.2d 300, 305 (D.C.1984) (moving party must show that evidence is newly discovered, movant through due diligence could not have discovered evidence before lower court ruled, evidence is not merely cumulative or impeaching, evidence would have produced a different result at a new trial). In light of the length of time the matter had been at issue, the volume of expert and other testimony presented, and the short period of time since the decision, we hold that appellant then failed to meet her burden under this standard, however it may be applied to a child visitation dispute in general.

gations of abuse before finding her in contempt. Appellant failed to do so in both the November 1985 trial from which she did not appeal an adverse ruling and in the instant case. Even after ruling against Morgan on the abuse issue on July 17 and finding sufficient basis for contempt, the trial court exercised considerable restraint by affording Morgan the opportunity to avoid judgment and incarceration by allowing her two additional opportunities to permit visitation. Furthermore, Morgan was placed in the position of violating the visitation order throughout the first half of 1986 through her own inaction rather than exigent circumstances brought on by the court's rulings. Despite the fact that appellee began filing motions for contempt as early as February 1985, Morgan did not move to have appellee's visitation rights suspended until June 5, 1986. Morgan cannot now avoid the consequences of her repeated disobedience to the court's visitation orders by seeking refuge in the special facts of *Beckham.* The judgment of civil contempt is affirmed.

3. *Findings on the Allegations of Abuse.* Morgan contends that the trial court's findings with regard to the abuse issue were clearly erroneous. After listening to voluminous conflicting evidence from numerous witnesses and experts at this trial,[8] the trial court stated that although appellant's accusations had caused it to hesitate and pause in order to be assured that the abuse did not occur, it found that appellant had failed to prove by a preponderance of the evidence that appellee had abused the child. This court too has seriously considered appellant's arguments in its review of the record. We conclude that the trial court's resolution of conflicting testimony and the witnesses' credibility was not clearly erroneous. D.C.Code § 17–

305(a) (1981); *see e.g., Cahn v. Antioch University,* 482 A.2d 120, 128 (D.C.1984).[9]

*Affirmed.*

---

8. This was the second trial on this issue. Morgan accused appellee of similar abuse in earlier visitations. A trial was conducted before the same trial judge in November 1985 and appellant did not appeal from an adverse verdict.

9. Appellant also appeals a denial of her motion to compel appellee to answer certain questions posed during a deposition relating to proceedings involving appellee in another jurisdiction.

It appears from the record that subsequently appellee turned over two court documents at issue and appellant's attorney was given free rein to cross-examine appellee on this subject during the hearings in this case. The cross-examination of appellee was completed without reserving any objection; therefore any error in the denial of the motion is moot.