Ben-Acadia, Ltd. ("Ben-Acadia"), a Louisiana corporation engaging exclusively in the retail sale of the Benetton line of merchandise, with its principal place of business in Lafayette, Louisiana, and two Alabama retailers, Benedot, Inc., and Al-Ben, Inc., filed suit in Jefferson County Circuit Court against Benetton S.p.A., an Italian corporation doing business in Jefferson County; Gilberto Casagrande, an Italian citizen temporarily residing in Louisiana; Dixieben, Inc., a Louisiana corporation headed by Casagrande, acting as a sales representative for Benetton S.p.A. in Jefferson County, with its principal place of business in New Orleans, Louisiana; and a number of companies alleged to be subsidiaries of Benetton, S.p.A., all of which are also alleged to be either Italian companies doing business in Jefferson County or corporations organized under the laws of other states, doing business in Jefferson County. The plaintiffs alleged fraud, breach of contract, breach of fiduciary duties, defamation, and conspiracy.[1] Arguing that *Page 488 
Louisiana would be a more appropriate forum in which to try Ben-Acadia's suit, the defendants moved to dismiss Ben-Acadia under the doctrine of forum non conveniens, Ala. Code 1975, § 6-5-430. The trial judge, the Honorable Charles R. Crowder, granted that motion. Ben-Acadia then filed this petition for a writ of mandamus directing the trial judge to reinstate it as a plaintiff in the suit. For the following reasons, the writ is denied.
Mandamus is a drastic and extraordinary writ to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court. In cases involving the exercise of discretion by a lower court, a writ of mandamus may issue to compel the exercise of that discretion; however, it may not issue to control the exercise of discretion except in a case of abuse.Ex parte Auto-Owners Ins. Co., 548 So.2d 1029 (Ala. 1989).
Essentially, the doctrine of forum non conveniens allows a court that has jurisdiction and that is located where venue is proper to refuse to exercise its jurisdiction when, for the convenience of the parties and witnesses, and in the interests of justice and judicial economy, the case could be more appropriately tried in another forum. The prevailing question of whether a case should be entertained or dismissed depends upon the facts of the particular case and is addressed to the sound discretion of the trial judge. In determining whether to exercise or decline to exercise jurisdiction, the trial judge should consider the location where the acts giving rise to the action occurred, the relative ease of access to sources of proof, the location of the evidence, the availability of compulsory process for the attendance of unwilling witnesses, the cost of obtaining the attendance of willing witnesses, the possibility of a view of the premises, if a view would be appropriate to the action, and any other matter in order to assess the degree of actual difficulty and hardship that would result to the defendant in litigating the case in the forum chosen by the plaintiff. If, with an eye toward the goal of achieving a fair trial and after weighing all of the pertinent factors, the judge finds that the balance is strongly in favor of the defendant, he may decline to exercise jurisdiction and dismiss the complaint. Ex parte Southern Ry., 556 So.2d 1082
(Ala. 1989); Ex parte Auto-Owners Ins. Co., supra.
As previously noted, Ben-Acadia is a Louisiana corporation, with its principal place of business in Lafayette, Louisiana. None of the communications and transactions that form the basis of its suit occurred in Alabama. The individual with whom Ben-Acadia primarily dealt, Gilberto Casagrande, is an Italian citizen temporarily residing in Louisiana and is president of Dixieben, a Louisiana corporation with its principal place of business in New Orleans, Louisiana. Casagrande dealt with Ben-Acadia in Louisiana. Although this case is apparently still in the early stages of discovery, it appears to us that none of the witnesses that might testify on behalf of the defendants resides in Alabama. Consequently, compulsory process for the attendance of any unwilling witnesses residing in Louisiana would not be available to the defendants if the case is tried in Jefferson County, Alabama. Rule 45, A.R.Civ.P. Likewise, the cost of obtaining the attendance of any willing witnesses who reside in Louisiana would be greater if the case is *Page 489 
tried in Jefferson County than if it is tried in Louisiana. It also appears to us that any physical evidence that would be material to the defense is located in Louisiana, either in Lafayette or New Orleans (e.g., the corporate records of Ben-Acadia and Dixieben, samples of merchandise sold to Ben-Acadia, etc.). Furthermore, the record indicates that the trial judge was concerned that the application of both Alabama and Louisiana law in the same trial might create confusion in the minds of the jurors. Finally, although it is not clear, the record indicates that there are two lawsuits pending in Louisiana's courts, one in a state court and one in a federal district court, in which Ben-Acadia made the same or similar allegations against the defendants that it has made in Jefferson County. After examining and weighing the factors enunciated in Ex parte Southern Ry., supra, and Ex parteAuto-Owners Ins. Co., supra, we cannot say that the trial judge abused his discretion in ruling that the interests of justice and judicial economy would be better served if Ben-Acadia proceeded against the defendants in a Louisiana court. Accordingly, a writ of mandamus cannot issue. Ex parteAuto-Owners Ins. Co., supra.
WRIT DENIED.
HORNSBY, C.J., and JONES, SHORES and KENNEDY, JJ., concur.
[1] The plaintiffs' theories of recovery are best summarized by the following portion of their brief:
 "[Casagrande was] responsible for promoting Benetton products in the Southeastern United States, convincing and encouraging individuals and companies to become Benetton operators and franchisees, opening Benetton retail outlets, assisting in the opening and operation of retail outlets, and supervising the operations of retail outlets.
 "The Benetton Defendants and Casagrande entered into verbal contracts with plaintiffs providing that (1) plaintiffs would invest significant capital, personal effort, and time in constructing a 'Benetton style' of decor in their retail outlets and in operating their outlets according to the 'Benetton style' and (2) plaintiffs would sell only products ordered from the Benetton Defendants through Casagrande. In return, the Benetton Defendants and Casagrande agreed to sell merchandise to plaintiffs, assist plaintiffs in the selection and marketing of merchandise, to promptly ship merchandise ordered by plaintiffs, and to assist plaintiffs in the opening, decoration and operation of their outlets.
 "In reliance upon representations made by Casagrande relating to, among other things, levels of sales operated by retail outlets, the expertise of Casagrande/Dixieben in opening and operating retail outlets, the successfulness of the 'Benetton style' of operations, profits generated by retail outlets, and the assistance that would be provided to plaintiffs, plaintiffs opened retail outlets and made investments. The representations were false and were known to be false by the Benetton Defendants and Casagrande at the time they were made and were made with the intent to deceive and mislead the plaintiffs.
 "From the inception of the store openings, including Ben-Acadia's retail outlet located in Lafayette, Louisiana, Casagrande, in large part, controlled the merchandise ordered by the plaintiffs, the selling price of the merchandise, the timing and amount [of] any allowed merchandise discounts, and the general management and operation of plaintiffs' stores. Shipments of merchandise received by the plaintiffs consistently were late, composed of outdated, unordered, or damaged merchandise, had the wrong merchandise mix, and were substantially in excess of the amounts of inventory actually ordered. Only approximately 40% of what was ordered by the plaintiffs was ever actually received, plaintiffs routinely received the merchandise after the prime selling season, and the plaintiffs' business operations were damaged in that sales and income were greatly reduced. The Benetton Defendants refused to allow Ben-Acadia and the other plaintiffs to return the merchandise.
 "The conduct of the Benetton Defendants and Casagrande was part of a scheme and conspiracy to defraud the plaintiffs, to use plaintiffs' outlets as a dumping ground for damaged and out-of-date merchandise, and to use plaintiffs' resources to establish a market in the Southeast for Benetton products. In addition, Casagrande, as the agent of the Benetton Defendants, made false and defamatory statements concerning the plaintiffs' business abilities and business ethics to various people with whom plaintiffs had business relationships. Further, Casagrande opened a store that directly competed with Ben-Acadia's retail outlet while 'holding up' shipments of merchandise to Ben-Acadia."
Although each of the plaintiffs made the same allegations against the defendants, there appears to be no connection between the plaintiffs other than their joining to bring this suit.