624 So.2d 1117 (1993)
Ex parte The BIRMINGHAM NEWS COMPANY, INC., The Associated Press, and The Advertiser Company, Inc.
(In re STATE of Alabama v. Harold Guy HUNT).
CR 92-971.
Court of Criminal Appeals of Alabama.
June 18, 1993.
*1121 James C. Barton, Gilbert E. Johnston, Jr. and Hollinger F. Barnard, Birmingham, for petitioners.
E. Cutter Hughes, Jr., H. Knox McMillan and G. Rick Hall, Huntsville, for Alabama Press Ass'n.
James H. Evans, Atty. Gen., and George Lamar Beck, Jr., Montgomery, for respondents.
Richard Gill, Robert Segall, Terry Brown and Fairley McDonald III, Montgomery, for Judge Randall Thomas.

PETITION FOR WRIT OF MANDAMUS
BOWEN, Presiding Judge.
This is a petition for writ of mandamus filed in this Court by The Birmingham News Company, Inc., The Associated Press, The Advertiser Company, and joined by the Alabama Press Association, as intervenor, seeking to compel Judge H. Randall Thomas of the Circuit Court of Montgomery County to open to the press the pretrial proceedings in the criminal prosecution of the governor of Alabama. "The news media generally have standing to intervene in a criminal proceeding to object to a motion to `seal' court records that would otherwise be a matter of public information." Ex parte Balogun, 516 So.2d 606, 611 (Ala.1987).

I. Background
On December 28, 1992, a special grand jury sitting in Montgomery County returned an indictment charging then Governor Guy Hunt with theft of property in the first degree, in violation of Ala.Code 1975, § 13A-8-3, and with using the office of governor to obtain direct personal financial gain, in violation of the state ethics law, see Ala.Code 1975, § 36-25-5. Also indicted in connection with the criminal prosecution of the governor were A. Gene McKenzie, Edna Earle Hicks, and Rosalind Blocher.
The governor's case was assigned to Circuit Judge H. Randall Thomas. Certain pretrial proceedings involving all four defendants were held in March 1993. During the course of those proceedings, Judge Thomas, on his own motion and without prior notice to the public or press, issued a "no comment" or "gag" order on the parties and their attorneys and conducted certain proceedings in chambers, with the public and press excluded.
On March 18, 1993, The Birmingham News Company, Inc., publisher of The Birmingham News; The Associated Press; and The Advertiser Company, publisher of The Montgomery Advertiser (all hereintogether referred to as "Petitioners") filed in this Court a petition for writ of mandamus alleging that Judge Thomas was in violation of the First Amendment by denying the public and the press access to the pretrial hearings held in chambers.
In their petition, Petitioners sought to have this Court direct Judge Thomas:
"1. To cease conducting closed proceedings in the case of State of Alabama v. Harold Guy Hunt, Criminal Case No. CC-92-2608 in the Circuit Court of Montgomery County, Alabama (the "Hunt case") without first hearing arguments against closure and making specific on-the-record findings demonstrating that closure is essential to preserve higher values and that the closure order is narrowly tailored to serve those interests, all as required by the First Amendment of the United States Constitution and by the Supreme Court of Alabama, Ex parte Consolidated Publishing Co., 601 So.2d 423, 433 (Ala.1992), cert. denied, 61 U.S.L.W. 3418 [___ U.S. ___, 113 S.Ct. 665, 121 L.Ed.2d 590] (Dec. 8, 1992).
"2. To permit Petitioners to have access to the transcripts of proceedings in the Hunt case that have been closed to the public to date; and
"3. To unseal the court file for the Hunt case, or the substantial portions thereof *1122 that are under seal, and to permit Petitioners to have access to such file."
Petition filed March 18, 1993, pp. 2-3.
On the same date the petition was filed, this Court[1] issued an order directing Judge Thomas to file "his findings demonstrating that closure of the proceedings ... is essential to preserve higher values than those established in the First Amendment of the United States Constitution. These findings should meet the requirements of Ex parte Consolidated Publishing Co., 601 So.2d 423 (Ala.1992)."
On March 19, 1993, Judge Thomas requested and was granted an extension of time in which to file his findings on the ground that counsel required additional time to file a response. On that same date, The Alabama Press Association (hereinafter "APA") filed a motion to intervene, which was granted on March 22, 1993. Judge Thomas' answer was also filed on March 22. Petitioners and APA filed separate responses to Judge Thomas' answer.
The matter was argued orally before this Court on the morning of March 30, 1993. That afternoon, this Court entered the following order:
"A petition for a writ of mandamus has been filed by The Birmingham News Company, The Associated Press, and The Advertiser Company, directed to Montgomery County Circuit Judge H. Randall Thomas in connection with the case of State of Alabama v. Harold Guy Hunt, Criminal Case Number CC-92-2608. After oral argument of the parties and conscientious deliberation this Court enters the following findings and order in the exercise of the constitutional authority provided in § 6.03(d), Amendment 328, Alabama Constitution of 1901:
"1. It is the finding of this Court that the Circuit Court, by the manner in which it ordered the closure of certain pretrial proceedings and the court file in the above-styled cause, violated the constitutional provisions of the First Amendment guaranteeing the public and the news media the right of access to criminal proceedings. see Ex parte Consolidated Publishing Company, Inc., 601 So.2d 423 (Ala.1992).
"2. It is the finding of this Court that the answer of Judge Thomas filed in response to this Court's order of March 18, 1993, is inadequate to meet constitutional requirements and does not satisfy the demands of Ex parte Consolidated Publishing Company, Inc., 601 So.2d 423 (Ala.1992).
"3. Therefore, unless the Circuit Court complies with the further order of this Court as set out below, it is the order of this Court that the Circuit Court shall immediately afford the Petitioners access to the complete and entire transcripts and court file of all prior proceedings which were ordered closed in the case of State v. Hunt, supra.
"4. Such immediate and complete disclosure shall not be required in the event that the Circuit Court complies with the following requirements:
"a. The Circuit Court shall conduct a hearing which is open to the public and the news media.
"b. At that hearing, the Circuit Court, after hearing argument from the parties, shall specify by individual transcript page number which portions and which pages of the transcripts of the prior proceedings and which portion of the court file are to remain closed or sealed and to which the news media and the public shall continue to be denied access.
"c. The Circuit Court shall specifically and individually address those proceedings previously ordered closed on the grounds of grand jury matters and attorney-client privilege. The Circuit Court shall specifically address the "grand jury matters" in regard to any criminal prosecution of any potential defendant.
"d. At the hearing, the presumption shall be that the entire prior proceedings should have been open. The burden of proof shall be on the party requesting closure. Clear and convincing evidence must be presented in order to justify the continued closure of any portion *1123 of any prior proceeding or sealing of any portion of the court file. Holland v. Eads, [614 So.2d 1012] (Ala.1993).
"e. The Circuit Court shall prepare specific and detailed written findings with regard to each portion of the prior proceedings or court file which the Circuit Court orders shall remain closed or sealed. Each such portion shall be identified by transcript page number and a specific and precise reason or reasons for closure shall accompany each portion which the Circuit Court orders closed.
"f. The above hearing shall be conducted on or before April 9, 1993. The written findings of the Circuit Court shall be filed in this Court on or before 5:00 on the afternoon of that same date.
"5. No future proceeding and no portion of the court file in the case of State v. Hunt, supra, shall be ordered closed or sealed without strict compliance with the constitutional requirements of Ex parte Consolidated Publishing Company, Inc., 601 So.2d 423 (Ala.1992)."
On April 7, 1993, the circuit court held a hearing regarding this Court's order of March 30, 1993. On April 9, 1993, the circuit court entered an order releasing most of the court records and the hearing transcripts previously ordered sealed. In its order of April 9, 1993, the circuit court stated that its reasons for continuing to deny access to certain of the records and portions of the transcript were that those records and transcript portions relate to grand jury matters, involve matters that are subject to the attorney-client privilege, or concern plea negotiations. Contrary to the direction of this Court, the trial court did not "prepare specific and detailed written findings with regard to each portion of the prior proceedings or court file which the Circuit Court orders shall remained closed or sealed."
On April 15, 1993, APA filed a "letter brief," arguing that "the trial court still has failed to comply with the constitutional requirements of the First Amendment regarding public access to pretrial criminal proceedings and has failed to comply with the directives of the Ex parte Consolidated Publishing case and of this Court." Letter brief of April 15, 1993, at 5. APA requests that this Court "implement the provisions of its prior order requiring the trial court to release these remaining portions of the transcript of the closed proceedings." Id.
Although Governor Hunt's trial began on April 12, 1993, and concluded on April 22 when the jury returned a guilty verdict, the petition for writ of mandamus is not rendered moot by either the conclusion of the trial or the circuit court's release of the bulk of the previously sealed records and transcripts. The relief sought by the petition has not been granted in its entirety. Compare Continental Oil Co. v. Williams, 370 So.2d 953, 955 (Ala.1979) ("[s]ince [petitioner] has received the relief it requested, albeit from the [trial judge] rather than th[e Supreme] Court, the petition for mandamus is moot"). Additionally, the circuit court's order requiring portions of the records and transcripts to remain sealed extends beyond the completion of the trial. Consequently, there is still an issue requiring decision and action by this Court. See Ex parte Higgins, 434 So.2d 1376, 1378 (Ala.1983). Furthermore, even had all the relief sought by Petitioners been granted, "this controversy is `"capable of repetition, yet evading review."' It can reasonably be assumed that [P]etitioner[s] will be subjected to a similar closure order and, because criminal proceedings are typically of short duration, such an order will likely evade review." Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 6, 106 S.Ct. 2735, 2739, 92 L.Ed.2d 1 (1986). Under these circumstances, this "case is not moot." Id. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976).

II. First Amendment Right of Access
"The closure of a trial ... implicates both the defendant's Sixth Amendment right to a public trial and the public's First Amendment right of access." Project, Twenty-Second Annual Review of Criminal Procedure: United States Supreme Court and Courts of Appeals 1991-1992, 81 Geo.L.J. 853, 1388 (1993). See Ex parte Consolidated *1124 Pub. Co., 601 So.2d 423, 426-28 (Ala.), cert. denied, ___ U.S. ___, 113 S.Ct. 665, 121 L.Ed.2d 590 (1992), briefly summarizing the development of the law in this area. The United States Supreme Court has clearly established that the public, which includes the press,[2] has a First Amendment right of access to the trial of a criminal case. Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 603, 102 S.Ct. 2613, 2618, 73 L.Ed.2d 248 (1982); Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 580, 100 S.Ct. 2814, 2829, 65 L.Ed.2d 973 (1980). This right is related to, but independent of, an accused's Sixth Amendment right to a public trial,[3] "the common concern being the assurance of fairness." Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 7, 106 S.Ct. 2735, 2739, 92 L.Ed.2d 1 (1986) (hereinafter "Press-Enterprise II"). The Supreme Court has held that the public's right of access extends to jury voir dire, Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 508, 104 S.Ct. 819, 823, 78 L.Ed.2d 629 (1984) (hereinafter "Press-Enterprise I"), and to preliminary hearings, Press-Enterprise II, 478 U.S. at 10, 106 S.Ct. at 2741.
In determining whether a First Amendment right of access applies to a particular proceeding, the United States Supreme Court has utilized a two-part analysis, taking into "consider[ation] whether the place and process have historically been open to the press and general public" and "whether public access plays a significant positive role in the functioning of the particular process in question." Press-Enterprise II, 478 U.S. at 8, 106 S.Ct. at 2740. Where these questions are answered in the affirmative, the "First Amendment right of public access attaches." Id. at 9, 106 S.Ct. at 2740.
In concluding that the right of access was applicable to preliminary hearings, the Supreme Court first noted that such proceedings have traditionally been open to the public. Press-Enterprise II, 478 U.S. at 10, 106 S.Ct. at 2741. It then observed that, because "a finding [of probable cause] leads to a guilty plea in the majority of cases," a "preliminary hearing is often the final and most important step in the criminal proceeding," and, "in many cases provides `the sole occasion for public observation of the criminal justice system.'" Id. at 12, 106 S.Ct. at 2742 (quoting San Jose Mercury-News v. Municipal Court, 30 Cal.3d 498, 179 Cal.Rptr. 772, 638 P.2d 655, 663 (1982)). Additionally, "the absence of a jury, ... makes the importance of public access to a preliminary hearing even more significant." Press-Enterprise II, 478 U.S. at 12-13, 106 S.Ct. at 2742.
It has been noted that while Press-Enterprise II "dealt only with the preliminary hearing, the Court's reasoning appears applicable to a wide range of pretrial hearings, including bail hearings, suppression hearings, and the evidentiary hearings held on various motions (e.g., change of venue)." 2 W. LaFave & J. Israel, Criminal Procedure § 22.1 at 271 (2d ed. Supp.1991). In Ex parte Consolidated Pub. Co., 601 So.2d 423, 428-33 (Ala.), cert. denied, ___ U.S. ___, 113 S.Ct. 665, 121 L.Ed.2d 590 (1992), the Alabama Supreme Court was presented with the question of whether the public and press had a right of access to pretrial proceedings. Applying the two-part analysis developed by the United States Supreme Court, our Supreme Court concluded that the "First Amendment right of access to criminal proceedings described in Press-Enterprise II applies to pretrial hearings." 601 So.2d at 433. The Court also determined that the "First Amendment right of access to criminal proceedings applies to the court file [of those proceedings]." Id. Accord State v. Widenhouse, 556 So.2d 187, 189-90 (La.App.1990) ("the qualified constitutional right of access *1125 ... extends to documents filed in connection with the pretrial motions in criminal proceedings").
While it is clear from the cases discussed above that the public and, derivatively, the press have a constitutional right to attend criminal trials, including pretrial proceedings, this right "is not absolute." Globe, 457 U.S. at 606, 102 S.Ct. at 2620. Accord Press-Enterprise II, 478 U.S. at 9, 106 S.Ct. at 2740. In fact, access to criminal trial proceedings is generally referred to as a "qualified right." E.g., Waller v. Georgia, 467 U.S. 39, 44, 104 S.Ct. 2210, 2214, 81 L.Ed.2d 31 (1984); Press-Enterprise II, 478 U.S. at 9, 106 S.Ct. at 2741; Ex parte Consolidated Pub. Co., 601 So.2d at 433. The right of access is qualified because it "may be overcome ... by an overriding interest ... essential to preserve higher values." Press-Enterprise I, 464 U.S. at 510, 104 S.Ct. at 824, quoted in Press-Enterprise II, 478 U.S. at 9, 106 S.Ct. at 2741. Interests that may override the public's right to access include "the defendant's right to a fair trial,"[4]Waller v. Georgia, 467 U.S. at 45, 104 S.Ct. at 2215, and "compelling governmental interest[s]," Globe, 457 U.S. at 607, 102 S.Ct. at 2620, such as "the government's interest in inhibiting disclosure of sensitive information," Waller v. Georgia, 467 U.S. at 45, 104 S.Ct. at 2215; the government's interest in protecting "victims of sex crimes from [the] further trauma and embarrassment" of testifying in public, Globe, 457 U.S. at 607, 102 S.Ct. at 2620, see also Press-Enterprise II, 478 U.S. at 9 n. 2, 106 S.Ct. at 2741 n. 2, Lee v. State, 529 So.2d 181, 182-83 (Miss.1988); and the government's interest in protecting its witnesses from physical harm, see People v. Brown, 178 A.D.2d 280, 577 N.Y.S.2d 380 (1991) (where police "officer testified that he was then active as an undercover officer in the geographical area of defendant's arrest, and was involved in ongoing undercover narcotic investigations[,] ... the jeopardy to the undercover officer's effectiveness and his safety was properly determined to be an overriding interest"), appeal denied, 79 N.Y.2d 918, 582 N.Y.S.2d 78, 590 N.E.2d 1206 (1992). Additionally, "protecting the privacy of persons not before the court" may override the public's right of access. Waller v. Georgia, 467 U.S. at 48, 104 S.Ct. at 2216. See Post-Newsweek Stations v. Doe, 612 So.2d 549 (Fla.1992) (privacy interests of third parties named in prostitute's client list did not outweigh public's right of access in prosecution of prostitute).[5]
It is clear that there may be any number of rights or interests implicated at a criminal trial or pretrial proceeding and that these rights or interests may be advanced by the defendant, the prosecution, the public at large, or third persons who are not before the court. These rights and interests need not necessarily be conflicting. Where they are, however, "[t]he court's task is to balance paramount constitutional values rather than to abrogate one right or the other." State v. Tallman, 148 Vt. 465, 537 A.2d 422, 427 (1987). The trial court must take "special care" in balancing these interests. Waller v. Georgia, 467 U.S. at 45, 104 S.Ct. at 2215. While each case must be decided on its own facts, there is a presumption in favor of openness. See Richmond Newspapers, 448 U.S. at 573, 100 S.Ct. at 2825. Cf. The News-Journal Corp. v. Foxman, 939 F.2d 1499, 1512 (11th Cir.1991), and cases cited therein (discussing presumption in favor of openness in the context of prior restraint. The trial court may order closure only when "the party seeking to close the hearing advances an overriding interest that is likely to be prejudiced." Press-Enterprise II, 478 U.S. at 7, 106 S.Ct. at 2739.
"Generally, trials are open to the public. However, public access must be balanced with the effect on the parties. Newman v. Graddick, 696 F.2d 796 (11th Cir.1983). Only in special circumstances or where *1126 justice requires, are proceedings limited or completely closed to the public."
Ex parte Balogun, 516 So.2d 606, 610 (Ala. 1987).

III. Standard of Review
While appellate courts are not in accord as to the standard to be employed in reviewing a trial court's decision on a motion for closure, see Morgan v. Foretich, 528 A.2d 425, 427 n. 3 (D.C.App.1987), it appears that a large number of courts employ an abuse of discretion standard. See, e.g., Publicker Industries, Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir.1984); In re Subpoena to Testify Before Grand Jury, 864 F.2d 1559, 1563 (11th Cir.1989); Post-Newsweek Stations v. Doe, 612 So.2d 549, 553 (Fla.1992); People v. Brown, 178 A.D.2d 280, 577 N.Y.S.2d 380 (1991), appeal denied, 79 N.Y.2d 918, 582 N.Y.S.2d 78, 590 N.E.2d 1206 (1992); Commonwealth v. Milice, 401 Pa.Super. 96, 584 A.2d 997, 998 (1991). Cf. United States v. Raffoul, 826 F.2d 218, 222 (3d Cir.1987) ("[t]he decision to close a portion of a trial is a discretionary one"). We agree with the Court of Appeals for the District of Columbia that "some degree of discretion should be given to the trial court's assessment of the competing interests of the parties in light of the facts and circumstances of the particular case," but that "the trial court's exercise of discretion must be carefully reviewed." Morgan v. Foretich, 528 A.2d at 427 n. 3. Review of a trial court's sealing of the record or documents is clearly subject to review for abuse of discretion. Holland v. Eads, 614 So.2d 1012, 1014 (Ala.1993); In re Application and Affidavit for a Search Warrant, 923 F.2d 324, 326 (4th Cir.), cert. denied, ___ U.S. ___, 111 S.Ct. 2243, 114 L.Ed.2d 484 (1991). See also Wilson v. American Motors Corp., 759 F.2d 1568, 1571 (11th Cir.1985) (where parties presented "no legally sufficient reasons for the closure of the record[,]... the sealing of the record was an abuse of discretion"). Because closure of proceedings and sealing of court records are related matters implicating similar interests, we deem it appropriate to apply the same standard of review to both.
It is well settled that "[i]n cases involving the exercise of discretion by a lower court, a writ of mandamus may issue to compel the exercise of that discretion; however, it may not issue to control the exercise of discretion except in a case of abuse." Ex parte Ben-Acadia, Ltd., 566 So.2d 486, 488 (Ala.1990).

IV. Disposition of the Present Case
The trial court in the present case totally failed to consider any of the principles set out in Part II of this opinion prior to closing the pretrial proceedings and ordering the sealing of the court file. Further, those proceedings were closed without notice to the public and press and without opportunity for any interested persons to be heard on the matter. As we indicated in our order of March 30, this was a gross abuse of discretion on the part of the trial court.
Our order of March 30 provided the trial court with the alternatives of providing to Petitioners and APA immediate access to the sealed transcripts and records or conducting a hearing on the matter.[6] The trial court elected to conduct a hearing, after which the trial court released most of the previously sealed transcripts and records.
With regard to the transcripts of the pretrial proceedings that occurred on March 8, 9, 10, 11, 15, 16, and 22 of 1993, the trial court released all but portions of 120 pages of the 1084 pages of the transcript of the pretrial hearings. With regard to the court records, the court ordered that the following records remain sealed:
"1. A portion of hearing exhibit 96, consisting of 104 pages, that is comprised of correspondence between John Grenier, a lawyer, and the law firm of Balch & Bingham concerning litigation styled Hunt v. Anderson [, CV-91-A-1150-N].[7]

*1127 "2. Eleven (11) transcripts of Grand Jury testimony introduced as hearing exhibits.
"3. The following filings in State v. Hunt:

"a. Two motions to quash grand jury subpoenas.
"b. Order on motion to quash grand jury subpoena.
"c. Motion for disclosure and inspection.
"d. State's response to Defendant's objection to compel plea discussions.
"4. The following filings in State v. McKenzie [, CC-92-2609]:
"a. Transcript of grand jury testimony.
"b. Response to Defendant's objection to compel plea discussions.
"5. The following filings in State v. Hicks [, CC-92-2610]:
"a. Defendant's objection to compelling plea discussions.
"b. Order sealing filings concerning plea discussions.
"c. State's response to Defendant's objection to compel plea discussions.
"d. Motion to quash subpoena duces tecum.
"e. State's response to Defendant's objection to use of grand jury testimony.
"f. Transcript of grand jury testimony.
"6. The following filings in State v. Blocker [, CC-93-0003]:
"a. State's response to Defendant's objection to compel plea discussions."[8]
Order of April 9, Court Filing (footnotes added).
As noted in Part I, the trial court's stated reasons for continuing to deny access to these particular records and portions of the transcript are that these records and transcript portions relate to grand jury matters, involve matters that are subject to the attorney-client privilege, or concern plea negotiations. Because the bulk of the transcripts and records have been released, we need only determine whether the trial court abused its discretion in retaining these transcripts and records under seal.

A. Grand Jury Materials
The trial court stated in its order of April 9 that it had closed the hearing on defendant Hunt's motion to quash a grand jury subpoena after both the attorney for the witness and the attorney general had indicated that the witness' testimony "concerned a matter that was currently under investigation." Order of April 9 at 6. The court stated that it had also closed portions of hearings on the motions to dismiss the indictments filed by the various defendants "[t]he argument of those motions involved the disclosure of the names of grand jury witnesses and substantial excerpts of grand jury testimony" and "[p]arts of grand jury transcripts ... were offered as exhibits." Id. at 7. The order clearly indicates that the trial court initially closed these proceedings in order to preserve the secrecy of the grand jury and has retained the related transcripts and records under seal for the same reason. The grand jury that indicted Governor Hunt is still convened.[9]
It is well established "that the proper functioning of our grand jury system depends upon the secrecy of the grand jury proceedings." Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 218, 99 S.Ct. 1667, 1672, 60 L.Ed.2d 156 (1979). "The salient feature of grand jury procedure is secrecy." State ex rel. Baxley v. Strawbridge, 52 Ala. App. 685, 687, 296 So.2d 779, 780, cert. denied, 292 Ala. 506, 296 So.2d 784 (1974). In contrast to criminal trial proceedings, which are presumptively open, "grand jury proceedings *1128 have been closed to the public, and records of such proceedings have been kept from the public eye" since the 17th century. In re Grand Jury Proceedings, 942 F.2d 1195, 11, 98 (7th Cir.1991).
"[S]afeguarding the confidentiality of grand jury proceedings" serves "several distinct interests":
"First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule."
Douglas Oil Co., 441 U.S. at 218-19, 99 S.Ct. at 1672-73 (footnote omitted). See also Ala. Code 1975, § 12-16-214.
"Thus, to overcome these interests, the standard for determining when the traditional secrecy of the grand jury may be broken is deliberately stringent: parties seeking disclosure of grand jury transcripts must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed. Douglas Oil Co., 441 U.S. at 222, 99 S.Ct. at 1674. Put simply, the secrecy of the grand jury proceeding will not be broken except where the party seeking disclosure can show a `compelling necessity' or a `particularized need.' Id."

In re Grand Jury Proceedings, 942 F.2d at 1198.
Even in its right of access cases, the United States Supreme Court has acknowledged that while "many governmental processes operate best under public scrutiny, it takes little imagination to recognize that there are some kinds of government operations that would be totally frustrated if conducted openly. A classic example is that `the proper functioning of our grand jury system depends upon the secrecy of the grand jury proceedings.'" Press-Enterprise II, 478 U.S. at 8-9, 106 S.Ct. at 2740 (emphasis added). See also In re Disclosure of Evidence, 650 F.2d 599, 601 (5th Cir.)[10], text amended at government's request, 662 F.2d 362 (5th Cir.1981). The press and public simply have no general or presumed right of access to grand jury proceedings. The presumption of openness that attaches to criminal proceedings in general does not apply to grand jury proceedings. In re Subpoena to Testify Before Grand Jury, 864 F.2d 1559, 1563 (11th Cir.1989).
However, where grand jury matters, including current investigations, are discussed in open court, the secrecy of those proceedings is lost. See In re Charlotte Observer, 921 F.2d 47, 50 (4th Cir.1990). For this reason, the "preservation of grand jury secrecy and the sensitivity of an on-going criminal investigation" may serve as "`higher values' justifying [closure or] sealing." United States v. Haller, 837 F.2d 84, 88 (2d Cir.1988).
In connection with the grand jury, the materials that the trial court continued under seal fall into one of several categories: 1) the identity of unindicted witnesses who *1129 appeared before the grand jury;[11] 2) either the actual testimony or the substance of the testimony of witnesses who appeared before the grand jury;[12] or 3) the nature of either pending or continuing investigations before the grand jury.[13] With one minor exception,[14] we find the trial court's order continuing the sealing of materials concerning the grand jury proceedings to be "narrowly tailored" to preserve the "higher interests" of maintaining grand jury secrecy and protecting the on-going investigation.
We note that certain grand jury testimony was made available to Hunt and the other defendants, as part of discovery. According to the trial court's order, these materials were provided to the defendants "under a continuing confidentiality order." Order of April 9 at 8. The provision of these materials to the defendant, as part of discovery and under an order of confidentiality, cannot be said to constitute a loss of the secrecy of such materials.
"Discovery in a criminal case has traditionally been a private matter between the parties" and "historically [has] not been open to the press and public." In re Worrell Enterprises, Inc., 14 Va.App. 671, 419 S.E.2d 271, 275 (1992). Compare In re Charlotte Observer, 921 F.2d 47, 50 (4th Cir.1990) (where trial court inadvertently revealed in open court name of attorney under grand jury investigation, the "cat [was] out of the bag" and secrecy no longer attached to that information).

B. Attorney-Client Privilege
The trial court stated that it closed the portions of the pretrial hearings related to defendant Hunt's claims "that there had been an invasion of the attorney-client privilege by the testimony of Mr. [John] Grenier to the grand jury and his production of documents from [his] files to the grand jury." Order of April 9 at 9. In the trial judge's opinion, the "values of safeguarding the attorney-client privilege and protecting the defendant's Sixth Amendment right to counsel" took precedence *1130 over the general presumption in favor of open hearings. Order of April 9 at 10.
Alabama has codified the common law rule on attorney-client privilege. See Ex parte Enzor, 270 Ala. 254, 256, 117 So.2d 361, 362 (1960). Section 12-21-161, Ala.Code 1975, provides:
"No attorney or his clerk shall be competent or compelled to testify in any court in this state for or against the client as to any matter or thing, knowledge of which may have been acquired from the client, or as to advice or counsel to the client given by virtue of the relation as attorney or given by reason of anticipated employment as attorney unless called to testify by the client, but shall be competent to testify, for or against the client, as to any matter or thing the knowledge of which may have been acquired in any other manner."
No attorney-client privilege attaches to investigative reports that are merely compilations or synopses of facts found by members or associates of law firm from reviewing documents and interviewing witnesses and that are merely factual findings that were not acquired from the client. Further, the attorney-client privilege does not protect information acquired by an attorney while acting in a nonlegal capacity (e.g., as an investigator). See R. Weinberg, Confidential and other Privileged Communication 9-10 (1967); E. Epstein & M. Martin, The Attorney-Client Privilege and the Work-Product Doctrine 56-57 (2d ed. 1989); 8 J. Wigmore, Wigmore on the Law of Evidence § 2317 (McNaughton rev. 1961 and Supp.1991); 81 Am.Jur.2d Witnesses § 368 (1992). This is simply in keeping with the underlying purpose of the privilege, "which is to encourage candid `communication between attorneys and their clients and thereby promote broader public interest in the observance of law and administration of justice.'" Ex parte Great American Surplus Lines Ins. Co., 540 So.2d 1357, 1358 (Ala.1989).
"The general rule is that an attorney cannot disclose the advice he gave to his client about matters concerning which he was consulted professionally." Ex parte Great Am. Surplus Lines Ins. Co., 540 So.2d 1357, 1358 (Ala.1989). Assuming that all the prerequisites for claiming the attorney-client privilege can be met, see generally Swain v. Terry, 454 So.2d 948, 953 (Ala.1984), "the public interest in preservation of the attorney-client privilege and work product immunity is a significant factor to be weighed against [the public's right to access]." In re Continental Illinois Securities Litigation, 732 F.2d 1302, 1315 (7th Cir.1984). To hold otherwise would "pose[ ] a significant threat to the free flow of communications between clients and their attorneys and inhibit[ ] the ability of lawyers to adequately prepare their clients' cases." Crystal Grower's Corp. v. Dobbins, 616 F.2d 458, 461 (10th Cir.1980). It is clear that the attorney-client privilege may serve as a "higher interest" sufficient to justify closure or the sealing of records. See In re Continental, 732 F.2d at 1315.
However, in this case, defendant Hunt, the party to whom the privilege belonged, see Swain v. Terry, 454 So.2d at 953, evinced no desire for closure of that portion of the proceedings regarding the determination of the existence of the attorney-client privilege, although defendant Hunt did not waive his attorney-client privilege as to the privileged information itself. See R. 820. Consequently, there has been no demonstration that this "higher interest" needed any protection in this case.
However, as noted by the trial court, the hearings on the matter of attorney-client privilege "involved extensive use of grand jury testimony and other grand jury information." Order of April 9 at 10. Our review of the transcript discloses that those portions of the transcript that remain sealed because they involve matters relating to the attorney-client privilege also involve grand jury testimony. In this regard, the trial court has continued under seal only those portions of the transcript involving both the attorney-client privilege and grand jury material. For that reason, we find no abuse of discretion in the trial court's ordering the continued closure of those portions of the transcript.
With regard to the court file, the trial court ordered that "a portion of hearing exhibit 96, consisting of 104 pages, that constitute[s] correspondence between John Grenier *1131 and the law firm of Balch & Bingham concerning litigation styled Hunt v. Anderson, remain sealed." Order of April 9, Court Filings. During the pretrial hearings, the trial court found that Grenier dealt with Governor Hunt "in his capacity solely as head of the Hunt Inaugural Fund, Inc.," i.e., as a political consultant and not as a lawyer (R. 1091), but that "there were definitely circumstances under which John Grenier was the lawyer for Governor Hunt" and that "the major concerns I have concern some of the documents that were going back and forth in the memos" in connection with Hunt v. Anderson. R. 1089, 1091. Although this Court has reviewed Exhibit 96 in its entirety, we have been provided with no indication of which portion of those 104 pages remains under seal. However, there has been no specific objection to the closure of any portion of that particular exhibit.

C. Plea Negotiations
The trial court has continued under seal what is essentially "a brief exchange of remarks between the Court and the lawyers" concerning plea negotiations. Order of April 9 at 12-13. We agree with the trial court that as a general rule plea or settlement negotiations are clearly private matters between the parties. Such negotiations have not "historically been open to the press and general public." Press-Enterprise II, 478 U.S. at 8, 106 S.Ct. at 2740. Moreover, public access to such negotiations could obviously play a significantly harmful role, rather than "a significantly positive role[,] in the functioning of the [negotiation] process." Id. Cf. Baltimore Sun Co. v. Colbert, 323 Md. 290, 593 A.2d 224, 232 (1991) (recognizing that "the motion to enforce the plea agreement, if unsealed and made public prior to [the defendant's] trial, may prove prejudicial to him"). Accordingly, the press has no right of access to matters involving actual plea negotiations. Cf. Branzburg v. Hayes, 408 U.S. 665, 684, 92 S.Ct. 2646, 2658, 33 L.Ed.2d 626 (1972) ("the press is regularly excluded from grand jury proceedings, our own conferences, the meetings of other official bodies gathered in executive session, and the meetings of private organizations"); Baltimore Sun Co. v. Goetz, 886 F.2d 60, 64-65 (4th Cir.1989) (because proceedings relating to the issuance of search warrants are not open to the public, there is no first amendment right of access to search warrant affidavits).
If negotiations result in a plea, the plea agreement reached by the parties must be disclosed "in open court prior to the time [the] plea is offered." Rule 14.3(b), A.R.Crim.P. When the plea agreement is disclosed in open court, it becomes subject to the First Amendment right of access. Washington Post v. Robinson, 935 F.2d 282, 287-88 (D.C.Cir.1991) (First Amendment right of access applies to plea agreement). See also In re Washington Post, 807 F.2d 383, 390 (4th Cir.1986) ("we hold that the First Amendment right of access applies to documents filed in connection with plea hearings and sentencing hearings in criminal cases, as well as to the hearings themselves"). Until such time as a defendant is about to enter a guilty plea, however, there is no requirement of disclosure. No plea was entered in this case.
Although the trial court did not identify its reason for ordering the continued closure of each portion of the record as are directed in our March 30 order, we have identified portions of three pages of the transcript that remain closed in which the possibility of settlement is mentioned. See page 930, lines 24-25; page 931, lines 1-2, 4-8, 20-25; and page 932, lines 1-4, 8-9. Those portions contain statements by the trial court urging the parties to discuss "the possibility of getting something worked out." R. 932. Those portions do not involve "settlement negotiations" or the terms of negotiation and do not involve any representations by either party regarding settlement. Those portions reveal no more than that information disclosed at the "settlement conference," which, with the exception of two lines involving the grand jury testimony of John Grenier (page 652, lines 19-20), the trial court "opened." See R. 644-70. We see no reason for continued closure. Therefore, the trial court is hereby ordered to make available to petitioners and the APA the contents of the following portions of the record: page 930, lines 24-25; page 931, lines 1-2, 4-8, 20-25; and page 932, lines 1-4, 8-9.
*1132 For those same reasons, the trial court is hereby ordered to make available to petitioners and the APA the contents of the following portions of the court file: the State's response to Hunt's objection to compelling plea discussions; State's response to defendant McKenzie's objection to compelling plea discussions; defendant Hicks's objection to compelling plea discussions; the State's response to defendant Hicks's objection to compelling plea discussions; the order sealing filings concerning plea discussions; and the State's response to defendant Blocker's objection to compelling plea discussions.

D. Avoidance of Publicity
We note that the trial court stated in its order of April 9 that it had closed the hearings on pretrial publicity in an attempt to avoid "repeat[ing] it all in the press in the course of trying to decide" whether the publicity had adversely affected the defendant's right to a fair trial. Order of April 9 at 11. A trial court's apprehension that "an open hearing would result in a `barrage' of media coverage and damaging republication of much of the original publicity" is simply not a permissible reason to close the proceedings. In re Charlotte Observer, 882 F.2d 850, 854-55 (4th Cir.1989) (holding that magistrate erred in closing hearing on motion for change of venue filed by mail and wire fraud defendants Jim Bakker and Richard Dortch based on magistrate's perception that "republication" of adverse publicity would prejudice defendants' fair trial rights).
"Even if the magistrate were justified in thinking that `republication' at this point might well tip the balance, we are satisfied that he was simply wrong in thinking that, as a practical matter, closure could prevent that result. Once the question of prejudice had been raised by the defendants' motion [to close change of venue proceedings] and the closure issue was then raised by intervenors, the `republication' genie was out of the bottle. The magistrate's perception that an open hearing would result in a `barrage' of media coverage and damaging republication of much of the original publicity, and the district judge's assessment that such a hearing would occur in the context of a media `frenzy' may be accepted. But we think it equally surewith no reproach of the press intendedthat any press barrage and frenzy occasioned by an open hearing would be as nothing to the firestorms of purely speculative `republication' that would occur if press access to the hearing is denied. To recognize this is not to capitulate to a press that may be insufficiently concerned with defendants' fair trial rights; it is simply to be realistic about the imperatives under which a free press operates in our constitutional system, and about human nature. Where closure is wholly inefficacious to prevent a perceived harm, that alone suffices to make it constitutionally impermissible."
In re Charlotte Observer, 882 F.2d at 854-55.
However, the trial court has now released the filings and transcripts pertaining to that matter.
Although the trial court's order of April 9 is largely conclusory and is not in accord with the directions of this Court, it is minimally adequate to afford appellate review. We have carefully reviewed the transcript and records remaining under seal and we find that all of the items with the exceptions we have identified, relate to matters that we have held are "higher interests" sufficient to justify the sealing of the items. The trial court's order is "narrowly tailored to serve th[ose] interest[s]" and, with the exceptions we have identified, we find no abuse of discretion in that order.

V. Procedures for Ordering Closure
Currently, neither our rules of criminal procedure[15] nor our case law clearly sets *1133 forth procedures to be followed when the issue of closure arises. We note that the Alabama Supreme Court recently set forth the procedures to be followed by trial courts in determining whether to seal a record, Holland v. Eads, 614 So.2d 1012 (Ala.1993).[16] Taking into consideration the procedures set out in Holland v. Eads, 614 So.2d at 1016,[17] those set out in Standard 8-3.2, ABA Standards for Criminal Justice, Fair Trial and Free Press (3d ed. 1992),[18] and those followed in other courts, we now set forth the procedures to be followed by trial courts in this state in determining whether closure is appropriate.
In establishing closure procedures, we must first recognize that because the public and the press have a legally protected interest in access to criminal trial proceedings, they must be afforded the minimum due process requirements of "notice and an opportunity for a hearing appropriate to the nature of the case" before they may be excluded from those proceedings. United States v. Raffoul, 826 F.2d 218, 222 (3d Cir. *1134 1987). See also Gannett River States Pub. Co. v. Hand, 571 So.2d 941, 945 (Miss.1990). However, these requirements "must remain sufficiently flexible to accommodate the exigencies of the litigation process and avoid unwarranted delays." In re The Herald Co., 734 F.2d 93, 102 (2d Cir.1984). See also United States v. Raffoul, 826 F.2d at 222.

A. Pretrial Motions for Closure
In order to provide the requisite notice, pretrial motions for closure "must be `docketed reasonably in advance of their disposition so as to give the public and press an opportunity to intervene and present their objections to the court.'"[19]In re Washington Post Co., 807 F.2d 383, 390 (4th Cir. 1986). Accord Baltimore Sun v. Colbert, 323 Md. 290, 593 A.2d 224, 229 (1991); Gannett Pub. Co., 571 So.2d at 945. Docketing of the motion is sufficient to provide notice to the press or public of the impending hearing. Individual notice to the press or public is "unwarranted and impractical in the context of the administration of criminal litigation," and is not required. United States v. Criden, 675 F.2d 550, 559 (3d Cir.1982). Accord In re Knight Pub. Co., 743 F.2d 231, 234 (4th Cir.1984); Baltimore Sun, 593 A.2d at 229.
At a hearing on a motion for closure, "there is an ingoing presumption in favor of openness," In re Charlotte Observer, 882 F.2d at 853, and the party seeking closure has the burden of establishing that he or she has "an overriding interest that is likely to be prejudiced" if closure is not ordered. Press-Enterprise II, 478 U.S. at 7, 106 S.Ct. at 2739. "The court should provide individuals opposing closure an opportunity to object and to state the reasons for that opposition before ruling on the closure motion." Baltimore Sun, 593 A.2d at 229.
In determining whether closure is warranted, the trial court must balance the competing interests as discussed in Part II of this opinion. The court must also consider whether less drastic alternatives would serve those competing interests. Under Press-Enterprise II, "criminal proceedings may be closed to the public without violating First Amendment rights only if (1) closure serves a compelling interest; (2) there is a `substantial probability' that, in the absence of closure, that compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect that compelling interest." In re Washington Post, 807 F.2d at 392. With regard to the second requirement, there should be "a showing of a significant risk of prejudice to the defendant's right to a fair trial or of danger to persons, property, or the integrity of significant activities entitled to confidentiality, such as an ongoing undercover investigation or detection devices." In re The Herald Co., 734 F.2d 93, 100 (2d Cir.1984).
If closure is deemed appropriate, the trial court must make "specific, on-the-record findings demonstrating that closure is essential to preserve higher values and [that] the closure order is narrowly tailored to serve those interests." Ex parte Consolidated Pub. Co., 601 So.2d at 433. Accord Press-Enterprise I, 464 U.S. at 510, 104 S.Ct. at 824. In demonstrating the latter, the trial court should include its reasons for concluding that "no less drastic alternatives to closure are feasible." In re Charlotte Observer, 882 F.2d at 853. The trial court's findings "must be specific enough to enable an appellate court to determine whether its decision was proper." In re Search Warrant for Secretarial AreaGunn, 855 F.2d 569, 574 (8th Cir.1988). General "conclusory assertions" are not sufficient. In re Washington Post, 807 F.2d at 392.

B. Motion for Closure Made During Trial
When a motion for closure is made at the beginning of or during trial, "a pre-closure hearing should be granted as a matter of right to persons actually present and subject to removal from the courtroom." *1135 United States v. Raffoul, 826 F.2d at 225. While we do not agree with the Raffoul court that docketing of such motions is required, we do agree that "interested members of the press and public must be permitted a hearing within a reasonable time in order to move for access to sealed transcripts of a closed hearing." Id. In all other respects, the procedures for a motion for closure made during trial are the same as for pretrial closure motions.

C. Avoidance of Public Disclosure During Closure Hearing
In its order of April 9, the trial court noted several times that it had closed the hearings because it could not determine whether certain proceedings should be closed until it had heard the evidence and arguments and that this would defeat the purpose of closure. Several courts have recognized that public disclosure during the closure hearings may be a problem. To prevent inadvertent disclosure, the motion for closure "itself may be filed under seal," In re Herald, 734 F.2d at 102, and the trial court may accept submissions under seal or for in camera review, see In re Washington Post, 807 F.2d at 391. If the articulation of the trial court's specific findings "would itself reveal information entitled to remain confidential, the basis for closure may be set forth in a sealed portion of the record." In re Herald, 734 F.2d at 100. Accord In re Washington Post, 807 F.2d at 391; In re Search Warrant, 855 F.2d at 574. Moreover, the trial court may close the closure proceeding upon a prima facie showing that the requirements for closure have been met. Standard 8-3.2(b)(2), ABA Standards for Criminal Justice, Fair Trial and Free Press (3d ed. 1992). In order to determine "whether such a prima facie showing exists, the court should not require public disclosure of or access to the matter which is the subject of the closure proceeding itself and the court should accept submissions under seal, in camera or in any other manner designed to permit a party to make a prima facie showing without public disclosure of said matter." Id.

Conclusion
We have carefully scrutinized the action of the trial court in closing portions of the proceedings and of the court file, aware of the significance of the constitutional rights and freedoms involved in this case. Any court should be extremely reluctant to order the closure of any criminal proceeding. A court should close proceedings only after the due process safeguards set out in this opinion have been satisfied. As the United States Supreme Court has stated:
"The value of openness lies in the fact that people not actually attending [criminal proceedings] can have confidence that standards of fairness are being observed; the sure knowledge that anyone is free to attend gives assurance that established procedures are being followed and that deviations will become known. Openness thus enhances both the basic fairness of [criminal proceedings] and the appearance of fairness so essential to public confidence in the system."
Press-Enterprise I, 464 U.S. at 508, 104 S.Ct. at 823. We believe this expression has even greater application in the criminal prosecution of a public official.
For the reasons set forth above, the petition is granted to the extent that the trial court is hereby ordered to make available to the petitioners and the APA the following material from the record of the hearings: page 946, line 9; page 930, lines 24-25; page 931, lines 1-2, 4-8, 20-25; and page 932, and lines 1-4, 8-9. In all other respects, the petition is denied. The trial court is also ordered to make available the following material from the court file: the State's response to Hunt's objection to compelling plea discussions; the State's response to defendant McKenzie's objection to compelling plea discussions; defendant Hicks's objection to compelling plea discussions; the State's response to defendant Hicks's objection to compelling plea discussions; order sealing filings concerning plea discussions; and the State's response to defendant Blocker's objection to compelling plea discussions.
PETITION GRANTED IN PART AND DENIED IN PART.
*1136 TAYLOR, PATTERSON and McMILLAN, JJ., concur.
MONTIEL, J., recused.
NOTES
[1] Judge Mark Montiel has, on his own motion, recused himself from these proceedings.
[2] The press has no greater right to access than the general public. Branzburg v. Hayes, 408 U.S. 665, 684, 92 S.Ct. 2646, 2658, 33 L.Ed.2d 626 (1972); L. Tribe, American Constitutional Law § 12-20 at 955, 963 (2d ed. 1988). "The rights of newspapers do not occupy a special position; rather their right to be present in the courtroom derives from their status as members of the public." State ex rel. The Repository v. Unger, 28 Ohio St.3d 418, 504 N.E.2d 37, 39 (1986).
[3] The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...." The Alabama Constitution contains a similar provision. Ala. Const. art. I, § 6 ("in all prosecutions by indictment, [an accused has a right to] a speedy, public trial....").
[4] We note that the Supreme Court has stated that "[n]o right ranks higher than the right of the accused to a fair trial." Press-Enterprise I, 464 U.S. at 508, 104 S.Ct. at 823.
[5] See generally Criminal Procedure Project, 81 Geo.L.J. at 1391: "Among the compelling interests courts have found sufficient to justify closure are the defendant's right to a fair trial, the privacy rights of jurors and witnesses, and the protection of ongoing government investigations." (Footnotes omitted).
[6] The alternative of holding a hearing was provided because the documents and arguments presented to this Court had raised serious concerns as to whether some of the material did, in fact, warrant closure and sealing.
[7] Hunt v. Anderson was a civil suit filed by Governor Hunt in the United States District Court for the Middle District of Alabama, Northern Division, in which Hunt's contention, among others, was that the Alabama Ethics Laws did not apply to the governor.
[8] The cases of State v. McKenzie, State v. Hicks, and State v. Blocker, involve prosecutions of various members of the Hunt administration who have been indicted by the same grand jury that indicted Hunt.
[9] We are aware that the United States Supreme Court has held that a Florida law that "prohibits a grand jury witness from disclosing his own testimony after the term of the grand jury has ended ... violates the First Amendment to the United States Constitution." Butterworth v. Smith, 494 U.S. 624, 626, 110 S.Ct. 1376, 1378, 108 L.Ed.2d 572 (1990) (emphasis added). Butterworth is readily distinguishable from the present case, where the news media seeks grand jury materials relating to a grand jury that is still in session.
[10] In In re Disclosure of Evidence, then Montgomery County District Attorney James H. Evans, (who, as Attorney General, was the prosecutor in the Hunt case,) claimed that the federal district court had abused its discretion by prohibiting the disclosure of federal grand jury materials that Evans sought to use in the state prosecution of the former president of the Alabama Public Service Commission. The federal court of appeals held that Evans had failed to establish a "particularized need" for the disclosure. "The policies favoring grand jury secrecy must still be given weight. But, upon a showing of `particularized need' and `compelling necessity' disclosure may be permitted.... Disclosure of federal grand jury evidence and testimony to a state district attorney as a convenience to aid in the investigation of state criminal violations does not meet the particularized need standard." 650 F.2d at 601-02 (footnote omitted).
[11] Portions of the following transcript pages that remain sealed contain references to the identity of unindicted persons who appeared as witnesses before the grand jury, to the substance of or the actual testimony of those persons, or to questions by the prosecutor to witnesses before the grand jury: 458, 460, 466, 467, 475, 560 (question by Evans), 567 (questions), 573, 574, 575, 580, 586, 588 (questions), 589, 590, 593, 605, 609, 610, 611, 612, 613, 614, 615, 617, 618, 619, 620 (questions), 622 (questions), 624, 625, 630, 631, 675, 676, 677, 678, 681, 682, 684, 685, 686, 687, 688, 689, 693, 694, 814, 816, 891, 950, 951, 1021, and 1022.

The following court records that remain sealed also contain references to the identity of unindicted persons who were subpoenaed or who testified as witnesses before the grand jury: motions to quash grand jury subpoenas, order on motion to quash grand jury subpoena, motion for disclosure and inspection, motion to quash subpoena duces tecum, State's response to defendant's objection to use of grand jury testimony.
[12] The fact that John Grenier testified before the grand jury was not sealed. Portions of the following transcript pages that remain sealed contain either his actual testimony before the grand jury or the substance of that testimony: 292, 293, 308, 309, 310, 323, 327, 329, 330, 331, 333, 334, 335, 336, 337, 338, 339, 340 (involving a question to Grenier from a grand juror), 341, 344, 356, 357, 558, 559, 560 (Evans's question to Grenier in grand jury), 561, 562, 576, 577, 578, 579, 590, 591, 592, 593, 594, 595, 599, 600, 601, 603, 610, 612, 613, 618, 625, 626, 627, 628, 633, 634, 652, 881, 898, 919, 920, 1006, 1035, 1038, 1046, and 1070.

The fact that codefendant Edna Earle Hicks testified before the grand jury was not sealed. Portions of the following transcript pages that remain sealed contain either her actual testimony before the grand jury or the substance of that testimony: 563, 564, 565, 566, 567 (Evans's question to Hicks in grand jury), 568 (same), 580, 583, 588, 596, and 602.
The fact that codefendant A. Gene McKenzie testified before the grand jury was not sealed. Portions of the following transcript pages that remain sealed contain either his actual testimony before the grand jury or the substance of that testimony: 890, 929, and 930.
The following court records that remain sealed contain the actual testimony of witnesses before the grand jury: 11 transcripts of grand jury testimony introduced as hearing exhibits; transcripts of grand jury testimony in the case of State v. McKenzie and State v. Hicks.
[13] Page 470, line 1 through page 474, line 15; page 607, lines 1-6; page 944, lines 16-19; page 945, lines 15-18, 20-23; and page 947, lines 13-14, 17-18, 19-25.
[14] The trial court ordered the sealing of page 946, line 9. Our reading of the record convinces this Court that that line should not be sealed because the reference is to the deposition of the named witness and not to any testimony before the grand jury.
[15] Rule 9.3(b), A.R.Crim.P., provides, in pertinent part, that "[a]ll proceedings shall be open to the public, unless otherwise provided by law." The Committee Comments state that this rule "sets forth the right of the defendant to a public trial guaranteed by Article I, § 6, Alabama Constitution of 1901." As was discussed in Part II of this opinion, the defendant's right to a public trial is not the only protected interest that may be implicated in a criminal trial. Rule 9.3(b) clearly must be read in conjunction with the decisions of the United States Supreme Court in Richmond Newspapers, Globe, and Press-Enterprise I and II in order to take into account other protected interests, including the defendant's right to a fair trial. See, e.g., Press-Enterprise II, 478 U.S. at 3, 106 S.Ct. at 2738 (defendant himself sought closure of proceeding); Associated Press v. Bell, 128 A.D.2d 59, 130 A.D.2d 433, 515 N.Y.S.2d 432, 433 (same), affirmed, 70 N.Y.2d 32, 517 N.Y.S.2d 444, 510 N.E.2d 313 (1987).

The Committee Comments to Rule 9.3(b) also state that the rule "is taken from ABA, Standards for Criminal Justice, Fair Trial and Free Press 8-3.2 and 8-3.6 (2d ed. 198[0])." We note that the ABA standards have recently been "entirely redrafted in light of the new access doctrine of Richmond Newspapers v. Virginia." ABA Standards for Criminal Justice, Fair Trial and Free Press 8-3.2 at 22 (3d ed. 1992).
[16] In Holland, which involved the sealing of the record in a civil case, the Supreme Court recognized only a common law right of access to the records, 614 So.2d at 1014-15, while in Ex parte Consolidated Pub. Co., it recognized a First Amendment right of access to records of criminal pretrial proceedings, 601 So.2d at 433.
[17] In Holland, the Court stated:

"[I]f a motion to seal is filed, then the trial court shall conduct a hearing. The trial court shall not seal court records except upon a written finding that the moving party has proved by clear and convincing evidence that the information contained in the document sought to be sealed:
"(1) constitutes a trade secret or other confidential commercial research or information; or
"(2) is a matter of national security; or
"(3) promotes scandal or defamation; or
"(4) pertains to wholly private family matters, such as divorce, child custody, or adoption; or
"(5) poses a serious threat of harassment, exploitation, physical intrusion, or other particularized harm to the parties to the action; or
"(6) poses the potential for harm to third persons not parties to the litigation.
"If any one of the above criteria is satisfied, then the trial court may seal the record, or any part of the record, before trial, during trial, or even after a verdict has been reached.
"This approach limits, but does not abolish, the range of judicial discretion. There is a presumption in favor of openness, which can be overcome only by clear and convincing evidence that an individual's privacy interest (as set out above) rises above the public interest in access."
Holland v. Eads, 614 So.2d at 1016 (citations omitted).
[18] Standard 8-3.2 is entitled "Public access to judicial proceedings and related documents and exhibits," and provides, in pertinent part:

"(a) In any criminal case, all judicial proceedings and related documents and exhibits, and any record made thereof, not otherwise required to remain confidential, should be accessible to the public, except as provided in section (b).
"(b)(1) A court may issue a closure order to deny access to the public to specified portions of a judicial proceeding or related document or exhibit only after reasonable notice of and an opportunity to be heard on such proposed order has been provided to the parties and the public and the court thereafter enters findings that:
"(A) unrestricted access would pose a substantial probability of harm to the fairness of the trial or other overriding interest which substantially outweighs the defendant's right to a public trial;
"(B) the proposed order will effectively prevent the aforesaid harm; and
"(C) there is no less restrictive alternative reasonably available to prevent the aforesaid harm.
"(2) A proceeding to determine whether a closure order should issue may itself be closed only upon a prima facie showing of the findings required by Section b(1). In making the determination as to whether such a prima facie showing exists, the court should not require public disclosure of or access to the matter which is the subject of the closure proceeding itself and the court should accept submissions under seal, in camera or in any other manner designed to permit a party to make a prima facie showing without public disclosure of said matter."
[19] Parties are encouraged to file motions for closure well in advance of trial so that an adequate hearing may be had prior to any ordered closure. While the usual case will be for either the State or the defendant to move for closure, we recognize that there may be cases where the trial court, sua sponte, raises that issue. In those cases, the trial court must set the matter for hearing and follow the remaining procedures set forth in this opinion.